**CREDIT CARD SERVICE CORPORA-
TION, and John P. Ferry,
Petitioners,**

**v.**

**FEDERAL TRADE COMMISSION,
Respondent.**

**No. 73–1357.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 26, 1974.

Decided March 29, 1974.

Stephen C. Rogers, Washington, D. C., for petitioners. John H. Schafer, III, Washington, D. C., also entered an appearance for petitioners.

Louis C. Keiler, Jr., Atty., F. T. C., with whom Harold D. Rhynedance, Jr., Asst. Gen. Counsel, F. T. C. was on the brief for respondent.

Richard P. Taylor, Washington, D. C., with whom William E. Miller, Michael D. Campbell and Michael J. Malley, Washington, D. C., were on the brief for Universal Air Travel Plan American Airlines, Pan American World Airways, Inc. and Piedmont Airlines Inc., as amici curiae urging reversal.

Thomas J. O'Connell, Washington, D. C., Gen. Counsel, Board of Governors of the Federal Reserve System, Carl D. Lawson and Arnold P. Lav, Attys., Dept. of Justice filed a brief as amicus curiae.

Before BAZELON, Chief Judge, MacKINNON, Circuit Judge and CHRISTENSEN,* United States Senior District Judge for the District of Utah.

BAZELON, Chief Judge:

The Federal Trade Commission Order under attack here requires petitioner [1] to disclose in its advertising the statutory limitation on cardholders' liability for unauthorized use of their credit cards. Petitioner's central contention requires us to reconcile the 1968 Truth in Lending Act with its 1970 amendments. In addition, petitioner raises challenges concerning the breadth of the Commission's Order and the adequacy of the Commission's reasoning. Because we find petitioner's contentions without merit, we affirm.

## I

For $9 a year, petitioner Credit Card Service Corporation notified credit card companies that a subscriber's cards had been lost or stolen. It also assisted subscribers in resolving billing errors and in obtaining new cards. Petitioner's advertising emphasized that an individual is liable for the full amount charged to a lost or stolen card until the card's issuer is notified. On August 24, 1971, the Commission issued a complaint alleging that such advertising had appeared after the effective date of the 1970 amendments to the Truth in Lending Act, which limit potential liability for a lost or stolen credit card to $50 per card.[2] After a hearing, an Administrative Law Judge found that petitioner had engaged in "unfair methods of competition" and "unfair or deceptive acts or practices" in violation of Section 5 of the Federal Trade Commission Act.[3] He ordered petitioner to cease and desist from representing that cardholders will have to pay for all goods and services obtained by unauthorized use of their cards.[4] He also required that the following notice be contained in future advertising of petitioner's service:

### IMPORTANT NOTICE

Effective January 24, 1971, a Federal law provides that a cardholder has no liability for unauthorized use of his credit card unless all of the following four conditions are met. If the card issuing company (1) has notified you of your new limited liability, (2) has provided you with a pre-stamped envelope by which to notify them of a loss, (3) the card contains an approved method of identification, and (4) the use occurred before the

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. "Petitioner" is used throughout this opinion to refer collectively to petitioner Credit Card Service Corporation and petitioner John P. Ferry, its President.

2. Appendix 3–15.

3. Initial Decision, April 4, 1972, Supplemental Appendix 12, 22. When this case was tried before the Federal Trade Commission, the presiding officer held the title of Hearing Examiner. This title was changed to Administrative Law Judge on August 19, 1972.

4. *Id.* at 22–23.

card issuer is notified, then your liability is limited to $50 per card.[5]

The Commission affirmed the decision of the Administrative Law Judge.[6]

## II

Petitioner contends that the Truth in Lending Act as amended distinguishes between business credit cards and consumer (non-business) credit cards—only with the latter is cardholder liability for unauthorized use limited to $50. Petitioner maintains, therefore, that the Commission's Order will foster "incomplete and . . . inaccurate disclosures,"[7] because it disallows representations that cardholder liability is unlimited when a business card is lost or stolen.

In order to evaluate this contention we must consider the statutory background. In 1968 Congress passed the Truth in Lending Act[8] in order "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him. . . ."[9] The statute regulated the advertising of credit[10] and required that the cost of credit be disclosed.[11] Because it was a consumer protection statute, § 1603(1) exempted from the Act "credit transactions involving extensions of credit for business or commercial purposes . . ."[12]

In 1970, Congress enacted Title V of Public Law 91–508 in order to regulate the credit card industry.[13] This legislation prohibited the unsolicited distribution of credit cards,[14] made the fraudulent use of such cards a federal crime,[15] and, in § 1643, limited cardholder liability to $50 for the "unauthorized use of a credit card."[16] Although other options

---

5. *Id.* at 24. This notice was required for written material offering the sale of petitioner's service to the public. A briefer notice was required for radio and television commercials. Id.

6. Final Order and Opinion of the Commission, Docket No. 8861, January 19, 1973, Supplemental Appendix 1–11. The Commission modified the Administrative Law Judge's decision in one respect not relevant to this appeal—an order by the Law Judge requiring restitution to certain consumers was found not to be an appropriate remedy. *Id.* at 7–9.

7. *Id.* at 9.

8. 15 U.S.C. § 1601 et seq.

9. 15 U.S.C. § 1601.

10. 15 U.S.C. §§ 1661–1664.

11. 15 U.S.C. §§ 1636–1639.

12. 15 U.S.C. § 1603:
This subchapter [The Truth in Lending Act] does not apply to the following:
(1) Credit transactions involving extensions of credit for business or commercial purposes . . . . .

13. 84 Stat. 1114, 1126–1127; 15 U.S.C. §§ 1602, 1642–1644.

14. 15 U.S.C. § 1642:
No credit card shall be issued except in response to a request or application therefor. This prohibition does not apply to the issuance of a credit card in renewal of, or in substitution for, an accepted credit card.

15. 15 U.S.C. § 1644:
Whoever, in a transaction affecting interstate or foreign commerce, uses any counterfeit, fictitious, altered, forged, lost, stolen, or fraudulently obtained credit card to obtain goods or services, or both, having a retail value aggregating $5,000 or more, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

16. 15 U.S.C. § 1643:
(a) A cardholder shall be liable for the unauthorized use of a credit card only if the card is an accepted credit card, the liability is not in excess of $50, the card issuer gives adequate notice to the cardholder of the potential liability, the card issuer has provided the cardholder with a self-addressed, prestamped notification to be mailed by the cardholder in the event of the loss or theft of the credit card, and the unauthorized use occurs before the cardholder has notified the card issuer that an unauthorized use of the credit card has occurred or may occur as the result of loss, theft, or otherwise. Notwithstanding the foregoing, no cardholder shall be liable for the unauthorized use of any credit card which was issued on or after the effective date of this section, and, after the expiration of twelve months following such effective date, no cardholder shall be liable for the unauthorized use

were considered,[17] the 1970 legislation was passed as an amendment to the 1968 Truth in Lending Act. Petitioner maintains that because the credit card legislation is an amendment to the 1968 Act, it is subject to the § 1603(1) "business exception" in that Act. Therefore, petitioner concludes, when a credit card is issued or used primarily for business or commercial purposes, the $50 liability limit of § 1643 does not apply.

Simply on the face of the statutory language, this argument is unpersuasive. The statutory limit on liability comes into play only when there is an "unauthorized use" of a credit card.[18] Section 1603(1) exempts from the statute "credit transactions . . . for business . . . purposes."[19] In the case of unauthorized use, the only event that is arguably a "credit transaction" is the unauthorized use itself. Does this mean that unauthorized uses for business purposes are "credit transactions . . . for business . . . purposes" and therefore exempt from the Act? Surely Congress did not intend that when a card is wrongfully used for business purposes the cardholder is fully liable, but when it is wrongfully used for consumer purposes, the limit on liability is $50. Under that approach, if a thief used a stolen credit card to rent a getaway car, we would have to decide if the rental was for a "business purpose" in order to determine the extent of the cardholder's liability. Indeed, as this example indicates, many unauthorized uses of credit cards are not ordinary "credit transactions" at all, but rather

instances of fraud. In sum, given the absence of specific statutory language or legislative history, we cannot impute to Congress the unlikely intention that an "unauthorized use" could be a "credit transaction" for purposes of the § 1603(1) exemption.

Petitioner apparently agrees, since it does not argue that the nature of the unauthorized use governs the issue of liability limitation. Petitioner contends instead that § 1603(1) exempts business credit cards from the $50 limit, regardless of whether the cards are wrongfully used for business or consumer purposes.

Petitioner never explains why § 1603(1), which exempts certain "credit *transactions*" should apply to a particular class of credit *cards*. Of course, when an individual uses his card for business, that is a "credit transaction . . . for business . . . purposes." But in such a case, the liability limitation does not come into play because there has been no unauthorized use. If, nonetheless, we assume that using a card for business purposes exempts an individual from the liability limitation, how long does that exemption last? Until the next time the card is used for a non-business purpose? Under this approach, liability would depend on how a card was last used before it was lost or stolen.

Petitioner, of course, seeks to avoid this result. Its position seems to be that when a card is issued or used primarily for business, the card itself becomes "a credit transaction . . . for business . . . purposes."[20] Thus the

of any credit card regardless of the date of its issuance, unless (1) the conditions of liability specified in the preceding sentence are met, and (2) the card issuer has provided a method whereby the user of such card can be identified as the person authorized to use it. For the purposes of this section, a cardholder notifies a card issuer by taking such steps as may be reasonably required in the ordinary course of business to provide the card issuer with the pertinent information whether or not any particular officer, employee, or agent of the card issuer does in fact receive such information.

17. Early legislative proposals would have placed credit card provisions under the Federal Deposit Insurance Act (*see* H.R. 12646, 90th Cong., 1st Sess.) and under Title 39 of the United States Code, which deals with the Postal Service (*see* H.R. 16542, 91st Cong., 2d Sess.).

18. *See* note 16, *supra*.

19. *See* note 12, *supra*.

20. Thus petitioner states the question as whether "business credit cards fall within the exemption provision [of § 1603(1)]." Reply Brief for Petitioner at 9.

card is exempted from the statute by § 1603(1) even on those occasions when it is not used for business. We are unwilling to assume that a credit *card* can be transformed into a credit *transaction* in this fashion.[21] Yet even if it could, petitioner's approach would be fraught with difficulty. For if § 1603(1) exempts business cards from the $50 liability limit it also exempts them from the other provisions of the 1970 credit card legislation—§ 1603(1) provides exemption from the whole Act, not just part of it.[22] This has disturbing consequences. As we have noted, the 1970 legislation makes the fraudulent use of credit cards a federal crime.[23] Thus, under petitioner's approach, the fraudulent use of business credit cards would not be a federal crime, while the fraudulent use of consumer credit cards would be. This unlikely result should not be attributed to Congress in the absence of specific statutory language or legislative history, neither of which are present here.

Moreover, petitioner's approach would create practical difficulties. A credit card is often used for both business and personal transactions. Considerable litigation and uncertainty would result if courts had to determine if a card was used "primarily" for business.[24] This determination would be necessary in order to decide whether the $50 liability limit applied and, what is worse, to decide whether a thief committed a federal offense when he fraudulently used a credit card.[25]

■ In sum, petitioner's attempt to apply the "business exception" to the $50 liability limitation requires stretching the statutory language, is unsupported by legislative history,[26] and has troublesome implications for other portions of the statute. We hold therefore that Congress never intended that the limitation on liability for "unauthorized use of a credit card" contained in § 1643 be affected by the fact that certain "credit transactions" are exempted from the statute by § 1603(1).[27] All credit cards, whether used for business or consumer purposes, are covered by the $50 liability limit.[28]

---

21. Nor can the transformation be achieved by arguing that when a card is *issued* for business, that is a "credit transaction involving extensions of credit for business. . . ." Credit is extended when a card is used, not when it is issued. Moreover, even if mere issuance of a card *could* bring the § 1603(1) exemption into play, then cards issued for business would be exempt from *all* of the 1970 credit card legislation, with the unlikely and unworkable results discussed below.

22. *See* note 12, *supra.*

23. *See* note 15, *supra.*

24. In its brief petitioner states the question as whether the exemption applies to cards "issued or used for business or commercial purposes." Brief for Petitioner at 6. We have added the word "primarily" to this formulation, since we do not understand petitioner to be contending that a card used otherwise is a "business credit card." *See* note 20, *supra.* If, however, petitioner *is* making such a contention its case is even weaker.

25. Similar problems would arise in determining whether it was legal to issue a credit card in the absence of a request or applica-

tion, since such issuance is banned by 15 U.S.C. § 1642. *See* note 14, *supra.*

26. Petitioner concedes that the question is "not specifically addressed" in the legislative history of Public Law 91–508. Reply Brief for Petitioner at 5. As we note below, the general purposes of the 1968 and 1970 legislation imply that petitioner's effort to apply § 1603(1) to § 1643 should be rejected.

27. The Board of Governors of the Federal Reserve System, in a clarifying amendment to Regulation Z issued pursuant to authority granted in the Truth in Lending Act (15 U.S.C. § 1604), has reached the same conclusion—"all cards, whether for business or consumer purposes, are covered . . . by the $50 liability limit." Brief for Board of Governors of the Federal Reserve System as Amicus Curiae; *see* 12 C.F.R. § 226.-13(a)(4) and (6).

28. Our conclusion is strengthened by the fact that § 1643 states that "a cardholder" shall not be liable for more than $50. *See* note 16, *supra.* The definitional sections of the Act provide that a "cardholder" could be a "corporation." *See* 15 U.S.C. § 1602(m), (d), (c). (A "cardholder" is a "person"; a "person" can be an "organization"; an "or-

Our holding is in keeping with the overall purpose of the Congressional enactments at issue here. While the 1968 Truth in Lending Act was designed to protect consumers,[29] the 1970 legislation dealt with the credit card industry in general.[30] The latter legislation may have been passed as an amendment to the former in order to apply the regulatory framework already in place for the Truth in Lending Act to the credit card field as well.[31]

### III

We turn now to petitioner's remaining contentions. The Commission's Order requires that an affirmative disclosure regarding liability for unauthorized use of credit cards be included in all advertising for petitioner's "credit card registration service." [32] Petitioner maintains that because the disclosure is irrelevant to some of its services, such as helping cardholders resolve billing disputes, the Order is overbroad—it applies even when advertising relates solely to matters having nothing to do with liability for unauthorized use.

■ We do not find the Commission's Order overbroad, because we do not think it reaches as far as petitioner fears. As we have noted, the Order applies only to petitioner's "credit card registration service." The Commission's Opinion described that service as one providing:

> as its principal service, notification on behalf of the subscriber to credit

card companies of the fact that a subscriber's credit cards have been lost or stolen. It also offers assistance to the subscriber in resolving billing errors of credit card companies and in obtaining new cards when the subscriber's cards have been lost or stolen, or the subscriber's address has changed.[33]

Thus the Commission saw petitioner's "credit card registration service" as a bundle of subservices, including, in particular, notification of issuers for the purpose of limiting liability. If an advertisement for petitioner is solely concerned with services having no relation, direct or indirect, to such notification, the Order is not applicable and the affirmative disclosure need not be made. Such non-notification services are not "credit card registration services" within the meaning of the Commission's Order. The Commission, in its brief to this Court, appears to concede this point.[34] To read the Order as applying to advertisements having nothing to do with cardholder liability would be to assume that the Commission required an irrelevant disclosure, an assumption we are unwilling to make.

■ Petitioner's final contention is that the Commission failed to support its affirmative disclosure requirement with an adequate statement of reasons. While the Commission's opinion itself provides little justification for the disclosure requirement, the Commission adopted as its own the Administrative

ganization" can be a "corporation"). Thus the liability limit would appear to apply even to corporate cardholders, which is contrary to the contention that there is a "business exception."

29. See text accompanying note 9, supra.

30. See, e. g., the reference to "any . . . credit card" in 15 U.S.C. § 1644 reproduced at note 15, supra.

31. The Administrative Law Judge found that "it is quite obvious that the credit card provisions were inserted by Congress as an amendment to the Truth in Lending Act merely as a convenient place to insert such provisions for efficient administration by the Federal Reserve Board and the Federal

Trade Commission." Initial Decision, supra, Supplemental Appendix at 20.

32. Final Order, supra, Supplemental Appendix at 2.

33. Opinion of the Commission, supra, Supplemental Appendix at 5.
See also Initial Decision, Supplemental Appendix at 21, Conclusion No. 1.

34. Brief for Respondent at 27, note 16 ("Petitioners refer to various 'services' which they offer or may offer in the future (Br. 18–19), and argue that the required disclosure is irrelevant to these 'services.' The Commission's order, however, applies only to petitioners' 'credit card registration service' (Supp.App. 2).").

Law Judge's initial decision.[35] That decision provides an adequate basis for the finding that the required statement of the statutory limit on liability was necessary to prevent deception.[36]

The Commission's Order is affirmed and enforced in its entirety.

So ordered.

---

35. Final Order, *supra*, Supplemental Appendix at 1.

36. *See* Initial Decision, *supra*, Supplemental Appendix at 12–27, esp. 19. Despite petitioner's objection, we do not find the affirmative disclosure, which tracks the statutory language, to be overly detailed or confusing.