49 N.J. Super. 372 (1958)
139 A.2d 783
N. ROTHENBERG & SON, INC., PLAINTIFF-RESPONDENT,
v.
ROBERT NAKO, T/A R. & N. TRUCK LEASING COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 24, 1958.
Decided March 27, 1958.
*374 Before Judges GOLDMANN, FREUND and CONFORD.
*375 Mr. John Tomasin argued the cause for defendant-appellant (Mr. Victor P. Mullica, attorney).
Mr. Louis Adler argued the cause for plaintiff-respondent (Messrs. Adler & Adler, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
The defendant appeals from a judgment of the Hudson County District Court in an action by plaintiff for the loss of certain goods when a tractor-trailer, registered in the name of the defendant, but operated by one Tatsya Ariyasu, was involved in an accident. The driver was killed and the goods damaged as a result of the accident. The complaint is in two counts. The first alleges breach of the contractual obligation between the plaintiff as owner of the goods and the defendant as carrier for failing to deliver the goods at destination in New York after accepting them in Chicago. The second count alleges negligence resulting in the loss of the goods while in transit.
The plaintiff was the consignee of bales of used clothing and bags of used shoes to be transported from Chicago to New York. The shipper, Samuel Portnoy, in answer to interrogatories, stated that on October 18, 1955 he called "Beejay's Filling Station and asked them to send me a truck out to haul some merchandise to New York * * * A man came out with the truck. My man loaded the truck and then I made out a bill of lading and when I asked to put down the name of the company receiving it, the man told me to put down R. & N. Truck Leasing Company. After the bill of lading was made out, the man got in the truck and drove away." The bill of lading, received in evidence, was a "straight bill," non-negotiable, and stated the consignee was the plaintiff, "N. Rothenberg and Son." The signature of "T. Ariyasu" appears across the face as does the signature of "Sam Portnoy," the shipper. The name of "R. & N. Truck Leasing Company, 1700 Tonnelle Avenue, North Bergen, New Jersey," appears as having received the goods.
*376 When asked further concerning the identity of the driver and the circumstances surrounding the shipment of the goods, Portnoy answered, "The driver of the truck was unknown to me. He was a Japanese fellow whom I had never seen before and when I made out the bill of lading, he told me that he was from R. & N. Truck Leasing Company." Portnoy paid Ariyasu $100 by check made out to Ariyasu as part payment for the trucking. This check was subsequently cashed by Ariyasu before he left Chicago on his fateful journey. The balance of the transportation charges was, according to the bill of lading, to be paid by the consignee upon receipt of the goods.
Joseph G. Szapor, another trucker, testified in behalf of the defendant that three months prior to the accident he knew that Ariyasu was in the trucking business for himself. He said that on October 15, 1955 he contracted with Ariyasu to haul some freight for him to Toledo, in Ohio, and to Chicago and paid him for his services. He further said that defendant Robert Nako was in no way involved in any agreement he had made with Ariyasu. Szapor said that when there was more freight to haul than he could truck, he would occasionally arrange with Ariyasu to do the trucking. When Ariyasu arrived in Chicago soon after October 15, Szapor said he met him at a truck stop. Szapor testified that Portnoy had "contracted" with him to truck the plaintiff's merchandise to New York but as he, Szapor, had another trucking job, Portnoy (at Szapor's suggestion) hired Ariyasu to haul the clothing to New York. Because Ariyasu was unfamiliar with the shipper's location in Chicago, Szapor accompanied him to Portnoy and was present when Portnoy hired Ariyasu, signed the bill of lading and paid him $115 (sic) for an advance payment on the trucking.
The testimony of Szapor is particularly pertinent with regard to the circumstances surrounding the preparation of the bill of lading.
"Q. Do you know how Mr. Portnoy obtained the name of R. & N. Truck Leasing Company on that invoice or bill of lading that he had?
*377 Mr. Adler: Objected to.
The Court: I will allow it.
A. Mr. Ariyasu went out in the cab and he got the identification card and came in and filled the top out there.
The Court: He had the ownership card?
The Witness: Yes.
Q. Then he filled that out on the top. Is that it? A. Right.
Q. Now were you present when Mr. Portnoy paid Mr. Ariyasu?
A. Yes."
Szapor was later hired by Portnoy to recover the water-soaked clothes from the submerged trailer in which they were originally shipped. The goods were eventually hauled to New York and delivered to the plaintiff. In this regard, the facts are somewhat contradictory, for Portnoy in his answers to interrogatories stated that he bought the damaged goods for $500.
The defendant, Robert Nako, testified to the circumstances under which Ariyasu was using the vehicle registered in his name. In January and in August 1955 Nako discussed with Ariyasu, his friend of several years, the purchase of a tractor and trailer for Ariyasu so that the latter could engage in the trucking business for himself. Separate arrangements were concluded for a tractor and for a trailer. Nako in August accordingly arranged to purchase a tractor (a 1952 used model) and, as Ariyasu had no credit standing, Nako borrowed $2,029 from a finance company toward its purchase, mortgaging another tractor of his own as security. Nako took title to the newly purchased tractor in his own name because "the finance company wanted it that way." On August 19, 1955 the newly purchased tractor was registered in Nako's trade name and thereafter displayed New Jersey license plates. Nako testified that it had been agreed with Ariyasu that the latter would make the payments on the newly purchased tractor, the payment book of the finance company was given to Ariyasu, and he made the payments up to the time of his death.
With regard to the trailer for Ariyasu to go with the tractor, Nako stated that he agreed with Ariyasu, also in August 1955, that he would sell Ariyasu his own 1949 *378 Trailmobile trailer, later involved in the accident, and Nako would then purchase a new Fruehauf trailer for himself. The value of the older trailer at that time was $3,000 and the balance due on the new trailer was $3,045.50, which it was agreed Ariyasu would pay by way of discharging his obligation to Nako for the Trailmobile. Ariyasu made the stipulated payments until the time of his death, but title to the Trailmobile trailer was retained in Nako's trade name and so registered.
Nako further testified that from the time in August 1955 that Ariyasu got possession of the tractor-trailer, he, Nako, never had possession of it, and never exercised any authority or control over Ariyasu, his customers, his charges for trucking, or the vehicle itself. He stated that he never had dealt with Sam Portnoy before the accident, nor with the plaintiff.
The district court judge, in an oral opinion, found that defendant had no Interstate Commerce Commission franchise and that "defendant by his action permitted the decedent to hold himself out as a representative of the defendant company." He rendered judgment for the plaintiff for $4,744, representing the sum of $5,244, less $500 for the salvage of the merchandise.
The basic issue to be resolved on this appeal is whether there is sufficient legal relationship between the defendant Nako, the registered owner of the vehicles (tractor-trailer), and Ariyasu, the deceased driver, as to impose liability, ex contractu or ex delicto, on the defendant.
The plaintiff does not strongly argue that the evidence warrants a finding that Ariyasu was acting as a servant or agent of the defendant under any express agency relationship when he received the merchandise from Portnoy and assumed to truck it to plaintiff. Cf. Lacombe v. Cudahy Packing Co., 103 N.J.L. 651 (E. & A. 1927). The trial judge predicated his judgment on a finding of apparent agency and made no finding as to express agency. We therefore find, in the exercise of our original jurisdiction, no express agency as a fact. R.R. 1:5-4(b). In the *379 instant case, moreover, the defendant raises no question concerning the issue of whether the plaintiff-consignee is the proper party to maintain this action, and therefore we will assume that plaintiff did have title, suffered the loss and is entitled to sue.
An action by a consignee can be maintained in tort for negligence resulting in destruction of the goods in transit. Schlosser v. Great Northern Ry. Co., 20 N.D. 406, 127 N.W. 502 (Sup. Ct. 1910); Railway Express Agency v. Huntress, 51 A.2d 379 (Mun. Ct. App. D.C. 1947); Goddard, Outlines, Bailments and Carriers (2d ed. 1928), § 408, p. 374; 13 C.J.S. Carriers § 249a, p. 509, note 22; § 249c(2), p. 512. It has also been held that the consignee can maintain an action ex contractu on the theory that the consignor in making the contract for the delivery of the goods acts as agent for the consignee. Kelsea v. Ramsey & Gore Manufacturing Co., 55 N.J.L. 320, 323 (E. & A. 1893); Griffith v. Ingledew, 6 Serg. & R. 429, 9 Am. Dec. 444, 449 (Pa. Sup. Ct. 1821); Krulder v. Ellison, 47 N.Y. 36, 7 Am Rep. 402 (Ct. App. 1871); Goddard, op. cit. supra, § 407, p. 373; 9 Am. Jur., Carriers, § 823, p. 933, n. 10; 13 C.J.S. Carriers § 249e, p. 513, note 77. Therefore, if the dealings between Portnoy and Ariyasu were such as to make the latter the apparent or ostensible agent of the defendant, plaintiff may take advantage thereof.
As noted the plaintiff's complaint is in two counts and alleges negligence and breach of contract. Considering the tort aspect of the action, and if there were no contractual relationship, the plaintiff could recover against the defendant only if Ariyasu was acting within the scope of his employment as an agent or servant for Nako. Dierkes v. Hauxhurst Land Co., 80 N.J.L. 369, 374 (E. & A. 1910). Cf. Lacombe v. Cudahy Packing Co., supra; Geary v. Simon Dairy Products Co., 7 N.J. Super. 88 (App. Div. 1950). See also Mechem, Outlines of Agency (4th ed. 1952), § 365, p. 246; 2 Am. Jur., Agency, §§ 359, 360, pp. 278-280. Similarly, recovery could not be had in tort against the defendant if we were to consider Nako as bailor of the *380 vehicles involved in the accident. New York, L.E. & W.R. Co. v. New Jersey Electric Ry. Co., 60 N.J.L. 338, 346 (Sup Ct. 1897)
The general rule is that there can be no tort liability predicated upon apparent authority because of lack of the essential element of reliance. 1 Restatement, Agency, § 265, p. 587; 2 C.J.S. Agency § 96b, p. 1211. But if, as plaintiff claims in the instant case, there was a contract between plaintiff and defendant to truck merchandise which became lost, a tort obligation arises notwithstanding the contract was founded on Ariyasu's agency by apparent authority. It is an instance of a "tort arising out of a breach of contract." Prosser, Torts (2d ed. 1955), § 81, p. 479, n. 7.
We have, therefore, the pivotal issue of whether the defendant's liability either in tort or contract for the damage to the goods may be supported by the theory of an agency relationship growing out of apparent authority within the factual proofs in this record, as found by the trial court.
The established rule pertaining to the apparent authority of an agent to bind a principal as against third persons has been stated in J. Wiss & Sons Co. v. H.G. Vogel Co., 86 N.J.L. 618, 621 (E. & A. 1914):
"As between the principal and third persons the true limit of the agent's power to bind the principal is the apparent authority with which the agent is invested. The principal is bound by the acts of the agent within the apparent authority which he knowingly permits the agent to assume, or which he holds the agent out to the public as possessing. And the reason is that to permit the principal to dispute the authority of the agent in such cases would be to enable him to commit a fraud upon innocent persons. Law v. Stokes, 32 N.J.L. 249.
The question in every such case is whether the principal has, by his voluntary act, placed the agent in such a situation that a person of ordinary prudence, conversant with business usages, and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question, and when the party relying upon such apparent authority presents evidence which would justify a finding in his favor, he is entitled to have the question submitted to the jury." (Emphasis added)
See also Erie R.R. Co. v. S.J. Groves & Sons Co., 114 N.J.L. 216, 218 (E. & A. 1934); cf. Mattia v. Northern *381 Insurance Co. of New York, 35 N.J. Super. 503, 513 (App. Div. 1955).
The trial judge factually found that the actions of the defendant in allowing Ariyasu to use the tractor-trailer with the registration certificates constituted the holding out necessary to the establishment of an ostensible agency. We will assume arguendo that this is so, for in our view the determinative issue is whether there was reliance by plaintiff on any holding out of defendant as Ariyasu's principal. Apparent authority will bind the purported principal only with respect to a third person to whom a manifestation of the defendant's consent to the holding out has been made known. 1 Restatement, § 8, comment (b), p. 26; Gitomer v. United States Casualty Co., 140 N.J. Eq. 531, 536, 537 (Ch. 1947).
The rationale of the doctrine of apparent authority has been the subject of much controversy among text writers. Professor Mechem indicates that the estoppel theory as stated in Reynell v. Lewis, 15 M. & W. 517, 153 Eng. Rep. 954 (1846), as opposed to the objective contract theory, is "the language of agency." Mechem, Outlines of Agency (4th ed. 1952), §§ 84-90 pp. 54-59.
In the Reynell case supra, Pollock, C.B. in discussing apparent authority by estoppel states the following principle of law:
"* * * agency may be created by the immediate act of the party, that is, by really giving the authority to the agent, or representing to him that he is to have it, or by constituting that relation to which the law attaches agency; or it may be created by the representation of the defendant to the plaintiff, that the party making the contract is the agent of the defendant, or that such relation exists as to constitute him such; and if the plaintiff really makes the contract on the faith of the defendant's representation, the defendant is bound; he is estopped from disputing the truth of it with respect to that contract; and the representation of an authority is, quoad hoc, precisely the same as a real authority given by the defendant to the supposed agent." (Emphasis added)
See also Freeman v. Cooke, 2 Ex. 654, 154 Eng. Rep. 652 (1848).
*382 The objective contract theory holds to the view that whenever an imputed principal by his words or conduct has placed his putative agent in such a position that a third person dealing with him properly believes the agent to have certain authority, then for the purposes of the third party the agent "has power measured by the representations, and the contract negotiated by T [third person] through A [agent] is the real contract of P [principal]." Powell, Tiffany on Agency (2d ed. 1924), § 16, p. 41. See also Note, 15 Harv. L. Rev. 324 (1902); Restatement, Agency, § 27, p. 76 (1933).
It seems, however, that whichever theory is correct, where the facts show that the third person in dealing with the putative agent is utterly indifferent to the existence of a principal, and rather indicates that the dealings are with the putative agent as a principal, no liability can be fashioned against one who later may appear by circumstance to be in a possible position of "apparent or ostensible" principal. Cf. Powell, op. cit. supra, p. 44, n. 19.
Our courts since J. Wiss & Sons Co. v. H.G. Vogel Co., supra, have repeated and adopted the theory of reliance. Heckel v. Cranford Golf Club, 97 N.J.L. 538, 541 (E. & A. 1922); American Well Works v. Royal Indemnity Co., 109 N.J.L. 104, 108 (E. & A. 1932); Baurhenn v. Fidelity & Deposit Co. of Maryland, 114 N.J.L. 99, 104-105 (E. & A. 1934); Erie R. Co. v. S.J. Groves & Sons Co., supra; Ruppert v. Jernstedt & Co., 116 N.J.L. 214, 217 (E. & A. 1936), "justified * * * in presuming"; Hudson Cooperative Loan Ass'n, Inc., v. Horowytz, 116 N.J.L. 605, 608 (Sup. Ct. 1936); Mesce v. Automobile Association of New Jersey, 8 N.J. Super. 130, 135 (App. Div. 1950), "justified in presuming"; Gabriel v. Auf Der Heide-Aragona, Inc., 14 N.J. Super. 558, 570 (App. Div. 1951), "justified by reason of the principal's acts in presuming the requisite agency"; Perigot v. Steiker, 18 N.J. Super. 134, 141 (App. Div. 1952), certification denied 9 N.J. 403 (1952), "justified * * * in presuming the existence of the requisite authority"; Price v. Old Label Liquor Co., Inc., 23 N.J. *383 Super. 165, 169 (App. Div. 1952), "relying upon such apparent authority * * *." See also Essex County Acceptance Corporation v. Pierce-Arrow Sales Co., 228 Mass. 270, 192 N.E. 604, 95 A.L.R. 1314 (Sup. Jud. Ct. 1934); Mechem, op. cit., supra, § 84, p. 54; 2 C.J.S. Agency § 96e(3), p. 1217; § 96e(4), pp. 1219-1220.
The language in 2 C.J.S. Agency § 96e(4), supra, is particularly appropriate:
"Where, for all that appears, he would have acted just as he did altogether regardless of the conduct or representations of the principal, whatever loss to him may be the result of his action is hardly attributable to the latter, so that the situation is not one calling for a determination on the basis of ostensible power."
The trial judge made no factual finding with regard to this crucial issue of reliance. From our examination of the transcript, and in the exercise of our original jurisdiction, R.R. 1:5-4(b), we are convinced that when Portnoy, the shipper-consignor in Chicago, assuming he was acting as agent for the plaintiff-consignee, engaged Ariyasu, he did not rely on defendant as being a principal. We approach this conclusion with the view that the party seeking to impose liability upon an alleged principal must assume the obligation and burden of proving the existence of an agency relationship. Hoddeson v. Koos Bros., 47 N.J. Super. 224, 231 (App. Div. 1957).
The following factors support the view we take on the issue of reliance. Szapor testified that he was originally "contracted by Mr. Portnoy to take this [plaintiff's] load to New York." When another load "came in" to "B.J.'s" Truck Stop, Szapor "told him [Ariyasu] he should go over and load this [plaintiff's] load * * *." He accompanied Ariyasu to show him the way to Portnoy's place of business and to aid in the loading. When asked what transpired, Szapor stated with regard to the hiring:
"He [Portnoy] hired Mr. Ariyasu, he signed the bill of lading and gave him $115 (sic) advance to get the load to New York."
*384 The original business dealing when Portnoy hired Ariyasu, and as further shown by Portnoy's answers to interrogatories, was of a most informal nature. His hiring was the result of an indiscriminate choice  the result of a phone call to a convenient truck stop for Szapor and when he was not available, Portnoy was quite satisfied to engage Ariyasu to do the trucking.
We also have the very significant fact that although the bill of lading indicated the carrier to be "R. & N. Truck Leasing Company," the check in part payment of the shipping charges was made out to Ariyasu individually, and in fact, was cashed by him prior to his departure on the trip resulting in his death. Additionally, there is the unrefuted testimony of the defendant that he had no prior dealings with either the plaintiff or Portnoy.
These factors, taken together, negative any hypothesis that Portnoy, either in acting for himself or on behalf of the plaintiff in dealing with Ariyasu, was in any manner relying on any agency relationship between Ariyasu and defendant that otherwise may have been apparent. The evidence concerning the use of "R. & N. Truck Leasing Co." on its bill of lading as designating the carrier or receiver of goods for transport, is as consistent with Portnoy's belief that the designation was a trade name for Ariyasu as with any other hypothesis. It does not satisfy the plaintiff's burden of proof and its case on this point must fall.
Nor do we reason that by analogy liability can be founded on the basis of the implications derived from having a required Interstate Commerce Commission franchise. 49 U.S.C.A. § 309 (1951). Ariyasu could not have been operating under a franchise issued to Nako, as the latter's unrefuted testimony explicitly denies having such a franchise. Trautman v. Higbie, 10 N.J. 239 (1952), and Honey v. Brown, 22 N.J. 433 (1956), are not therefore applicable.
Our disposition of this appeal makes it unnecessary to consider a further argument of the defendant that the contract of shipment was illegal.
*385 From our study of the transcript, we find no proof that Ariyasu was defendant's agent, by express, implied or apparent authority, and defendant was entitled to a verdict, as a matter of law. Therefore, the judgment is reversed and the judgment is herewith directed to be entered for the defendant.