210 N.J. Super. 655 (1986)
510 A.2d 324
BARBARA F. NAPPEN, ET ALS, PLAINTIFFS,
v.
C. KENT BLANCHARD, ET ALS, DEFENDANTS.
Superior Court of New Jersey, Law Division Monmouth County.
Decided February 25, 1986.
*656 Jeffrey Resnikoff for plaintiffs Barbara F. Nappen, Enoch L. Nappen and Evan Nappen (Resnikoff & Resnikoff, attorneys).
*657 Ronald E. Wiss, for defendant Chicago Title Insurance Company (Kimmelman, Wolff & Samson, attorneys).
MILBERG, A.J.S.C.
In February 1985, the plaintiffs, Barbara F. Nappen, Enoch L. Nappen and Evan Nappen, retained the defendant attorney, C. Kent Blanchard, to represent them in purchasing premises located at 21 Throckmorton Avenue, Eatontown, New Jersey ("Eatontown property"). The sellers were Kevin and Hettie Resch ("Resch").
The financing for this property was obtained partly through the plaintiffs' refinancing their home in Oakhurst, New Jersey ("Oakhurst property"), in the amount of $35,000, through First Fidelity Bank. Blanchard also represented the plaintiffs in this transaction.
For both transactions, the purchase of the Eatontown property and the refinancing of the Oakhurst property, Blanchard sought title commitments from defendant Chicago Title Insurance Company ("Chicago Title").
As the plaintiffs' attorney, Blanchard requested a title commitment for the Eatontown property from David-Pierce Abstract Co., an agent of Chicago Title. Chicago Title did issue the title commitment, number DP-93284, to the plaintiffs. The commitment listed, as an exception to any title policy issued, a mortgage given by Resch to City Federal Savings & Loan Association ("City Federal").
First Fidelity Bank issued a check for $35,000 to the plaintiffs for their Oakhurst property mortgage after Blanchard submitted a preliminary title binder issued by Chicago Title, along with an "approved attorney" letter designating Blanchard as such.
Blanchard was instructed by the plaintiffs alone to pay off the City Federal mortgage on the Eatontown property with this sum in order to clear title. Blanchard did not; consequently, plaintiffs acquired the premises encumbered by the City Federal *658 mortgage  the very lien excepted by the Chicago Title commitment number DP-93284.
On October 24, 1985, plaintiffs sued Blanchard for conversion and sued Chicago Title for its refusal to clear the title defect. Plaintiffs assert that Blanchard was Chicago Title's agent and that his wrongful act may be imputed to Chicago Title.
Chicago Title now moves for summary judgment asserting that Blanchard was not its agent but was the agent of plaintiffs alone.
Plaintiffs counter by asserting that the "approved attorney" letter establishes an agency relation between Blanchard and Chicago Title. Specifically, plaintiffs cite the following language in the letter regarding losses for which Chicago Title would be liable:
1. Failure of the Issuing Agent or Approved Attorney to comply with your written closing instructions to the extent that they relate to (a) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of documents and the disbursement of funds necessary to establish such status of title or lien, or (b) the obtaining of any other document, specifically required by you, but not to the extent that said instructions require a determination of the validity, enforceability or effectiveness of such other document, or (c) the collection and payment of funds due you, or
2. Fraud or dishonesty of the Issuing Agent or Approved Attorney in handling your funds or documents in connection with such closing.
Plaintiffs state that a premium for title insurance was paid to Blanchard, and that they paid him the $35,000 in reliance on his authority to clear the title defect as a precondition to the issuance of a title policy by Chicago Title. They claim that while the "approved attorney" letter was addressed to First Fidelity and expressly indemnified that Bank for losses arising out of the aforementioned events, the indemnification "inferentially" runs to plaintiffs' benefit as well.
In reply, defendant asserts that the promise of indemnification ran only to the First Fidelity Bank and that any reliance by plaintiffs on the letter as representing that Blanchard was Chicago Title's agent would be unreasonable.
*659 Additionally, defendant asserts that the exceptions were not instructions to Blanchard to pay off the mortgage. The commitment merely stated that the exception for the City Federal mortgage would be in the policy unless paid off. Whether it was paid off or not was of no concern to Chicago Title. Defendant also states that no premium was received.
Last, defendant points out that the "approved attorney" letter carried the title commitment number DP-93283  that is, it related to the plaintiffs' Oakhurst property and was not issued in connection with the purchase of the Eatontown property which, as previously mentioned, was the subject of title commitment number DP-93284. This circumstance is a most cogent one.
On the return date of the motion, counsel for Chicago Title admitted that there are no reported cases in New Jersey which would control the issue of Chicago Title's liability for the actions of its "approved attorney", Mr. Blanchard, on an agency theory. While there are numerous cases dealing with conduct akin to that of Blanchard in the context of attorney discipline, see, e.g., Matter of April, 69 N.J. 44 (1976); In re Weinblatt, 48 N.J. 559 (1967); In re Duckworth, 47 N.J. 235 (1966); In re Gelzer, 31 N.J. 542 (1960), my research has discovered no New Jersey cases dealing with the precise issue presented in this motion: Did the "approved attorney" letter establish an agency relationship between Blanchard and Chicago Title? Nevertheless, I conclude that it did not.
First, the "approved attorney" letter designating Blanchard as such was clearly issued to First Fidelity Bank with reference to the closing of the mortgage on the Oakhurst property. The title commitment number on the letter evidences this fact. Thus, while the proceeds of the mortgage were intended for the purchase of the Eatontown property, the "approved attorney" letter had no direct connection with that property whatsoever. If anything, the letter was concerned with the protection of First Fidelity Bank's possession of a valid mortgage lien on the *660 Oakhurst property. See 9 Appleman, Insurance Law and Practice § 5207, at 35-36 (1981).
Beyond this determination, I conclude that the mere fact that Blanchard was Chicago Title's "approved attorney" did not render him an actual agent of Chicago Title with respect to the purchase of the Eatontown property.
Initially, I consider the relevant provisions of the New Jersey Title Insurance Act of 1974, N.J.S.A. 17:46B-1 et seq. ("Act"). Section 46B-1 of the Act provides the following definitions:
h. "Approved attorney" means an attorney at law admitted to practice in the State of New Jersey, who is not an employee of a title insurance company or of a title insurance agent, upon whose examination of title and report thereon a title insurance company may issue a policy of title insurance.
i. "Title insurance agent" means a person, firm, partnership, association, corporation, cooperative or joint-stock company authorized in writing by a title insurance company to solicit insurance risks and collect fees in its behalf and who in the regular course of business as such agent shall perform all of the following functions: examine title to real estate, determine insurability in accordance with underwriting rules and standards prescribed by such title insurance company, and issue a title report, binder or commitment to insure, and policy based upon the examination performed by such agent and determination of insurability as aforesaid. Provided, however, the term "title insurance agent" shall not include officers and salaried employees of any title insurance company authorized to do a title insurance business within the State. [Emphasis supplied.]
In juxtaposition, the above-quoted provisions of the Act demonstrate that the authority of a title insurance agent is far greater than that of an "approved attorney," unless the latter has also been authorized in writing to perform the functions of a "title insurance agent", § 46B-1(i).
Second, there is good reason for distinguishing title insurance agents from "approved attorneys" who merely aid clients in obtaining title insurance. See Collins v. Pioneer Title Ins. Co., 629 F.2d 429, 435-436 (6th Cir.1980). In the cited case, Collins was the contract purchaser of a tract of land in the State of Tennessee. The same tract was also the subject of a contract of purchase by a second buyer, Chalupsky. Collins' attorney, Ables, who was an "approved attorney" for Pioneer Title Insurance Company, received explicit instructions from Collins to *661 obtain a title policy for the property which would show no exception for the Chalupsky claim that was then in litigation. Ables, apparently under pressure from both Collins and the sellers, submitted to Pioneer a preliminary title report which made no reference to the Chalupsky litigation; on the basis of that report, Pioneer issued an owner's binder and, eight months later, delivered a policy of title insurance without exception for the Chalupsky claim. As a result of the Chalupsky litigation, Collins lost his claim to the land. In subsequent litigation, a jury found in favor of Collins on his claims against Pioneer on the title policy and against Ables for negligence. The Sixth Circuit reversed.
One of the arguments rejected on appeal was that Ables, as the attorney involved in handling the application for title insurance, acted as Pioneer's agent and, therefore, Pioneer was bound by Able's knowledge of the Chapulsky claim. Collins' agency theory was based on Tenn. Code Ann. § 56-705, which provided that any person who solicited an application for insurance would be considered an agent of the insurer, not the insured. The Sixth Circuit disagreed, citing a specific Tennessee statute distinguishing title insurance agents from attorneys who aid clients in securing title insurance. The relevant portion of the Court's decision warrants reproduction in full:
There are sound reasons which support the Tennessee legislature's specific provision distinguishing title insurance agents from attorneys who aid clients in securing title insurance. Section 56-705 contains a statutory resolution of an issue noted by authorities on insurance law: may an insurance salesperson who aids an applicant in securing a policy of insurance be considered a concurrent agent of the insurer and the insured, e.g., 3 Couch on Insurance 2d § 25:100. The statute's resolution makes the solicitor of insurance an agent of the insurer "so as to afford to the insured a responsible connection with the insuring company." Fesmire v. MFA Mutual Insurance Company, 293 F. Supp. 1214, 1217 (W.D.Tenn. 1968). However, if TCA § 56-705 is applied here, Ables would be an agent for Pioneer and have interests in conflict with his attorney-client relationship with Collins. The Tennessee legislature avoided that situation by adopting the provisions in Chapter 34, Title 56, Tenn. Code Ann., which distinguish title insurance agents from attorneys involved in title insurance transactions on behalf of clients.

*662 It would be difficult to find a case better than the present one illustrating the potential conflicts of interest an attorney involved in securing title insurance may face. Ables was initially retained by Collins to examine title and to draft the closing documents. He was asked by Collins to secure a policy of title insurance as part of the closing, and he secured a policy of title insurance as part of his attorney-client relationship with Collins. For whatever reason, Ables obliged his client Collins by obtaining a policy for him without an exception for the Chalupsky lawsuit by failing to mention Chalupsky's claim in the attorney's documents on title which he sent to Pioneer. Ables also obliged another client, the sellers, by obtaining a policy of title insurance acceptable to Collins so that he would release the money held in escrow to them. Meanwhile he was also an "approved attorney" for Pioneer. [629 F.2d 435-436; emphasis supplied.]
Nothwithstanding the absence of a similar statutory provision in this state, I find the logic behind the Tennessee legislation to be all too compelling and, for lack of any authority to the contrary, I am guided thereby. The potential conflict an attorney may face in representing the interests of the insurer and, at the same time, remaining loyal to the attorney-client relationship and the confidences revealed therein militates against a finding of dual agency on the part of an "approved attorney" or any attorney who seeks to procure insurance on behalf of a client. But, cf., Meyerson v. Lawyers Title Ins. Corp., 39 A.D.2d 190, 333 N.Y.S.2d 33 (1st Dept. 1972), aff'd., 33 N.Y.2d 704, 349 N.Y.S.2d 675, 304 N.E.2d 371 (1973), in which a title insurance company was held liable for the fraudulent acts of its "approved attorney" to whom the plaintiff's separately retained attorney had been referred by the title company for the procurement of insurance on behalf of his client.
Accordingly, I find that Blanchard was not the actual agent of Chicago Title. Any alleged representations by Blanchard that he was acting as agent for Chicago Title (see Affidavit of Barbara F. Nappen, ¶ 3) are insufficient to warrant a factual finding of the existence of agency. C.B. Snyder Realty Co. v. Nat. Newark & Essex Banking Co., 14 N.J. 146, 157 (1953); Serbin v. Walt Disney World, 159 N.J. Super. 88, 92 (App.Div.), certif. den. 78 N.J. 337 (1978).
*663 Furthermore, I conclude that Blanchard was not the apparent agent of Chicago Title. Apparent agency is based on the manifestations of the principal in holding out another to third persons as its agent. Restatement, Agency 2d § 8. Even if, as the plaintiffs would contend, the "approved attorney" letter amounted to words or conduct of the principal sufficient to find an apparent agency, Barbara Nappen has merely stated that she was aware of the issuance of the letter (Affidavit of Nappen, ¶ 4); at no time have the plaintiffs claimed that they relied on the "approved attorney" letter when they entrusted Blanchard with their funds. Thus, the necessary element of reliance on the alleged apparent authority of Blanchard as Chicago Title's agent is lacking. See Restatement, Agency 2d § 8, Comment d., at 33 (1958); National Premium Budget Plan Corp. v. National Fire Ins. Co., 106 N.J. Super. 238, 242 (App.Div.), certif. den. 54 N.J. 515 (1969).
It does not avail plaintiffs to contend that they delivered to Blanchard the premium for the prospective policy of title insurance. The mere application for insurance and acceptance of premiums would not make Blanchard the agent of Chicago Title; there must be a finding of a special agency or an apparent agency. Mahon v. American Cas. Co. of Reading, 65 N.J. Super. 148, 183 (App.Div.), certif. den. 34 N.J. 472 (1961). There has been no prima facie demonstration of either strain of agency here and, in light of the foregoing discussions, neither can be inferred. Furthermore, there is no indication in the record, nor has it been contended, that Blanchard was authorized by Chicago Title to collect premiums on its behalf, see § 46B-1(i) of the Act, supra; cf. N.J.S.A. 17:22-6.1; and it is undisputed that no policy was ever delivered to Blanchard, see N.J.S.A. 17:22-6.2a (insurer which delivers policy of insurance to broker acting for insured automatically authorizes that broker to receive premiums on its behalf). Accordingly, as there was no actual or apparent authority to collect the premiums for Chicago Title, payment to Blanchard would not spell *664 payment to Chicago Title. See Zriny v. Hartford Fire Ins. Co., 10 N.J. Misc. 181, 158 A. 430 (Sup.Ct. 1932).
Even if receipt of the premium could be imputed to Chicago Title, such payment would not entitle the plaintiffs to a title policy without exception for the City Federal mortgage. Any instructions to Blanchard to clear that lien came from the plaintiffs, not from Chicago Title, which did not condition the issuance of a title policy upon the discharge of the mortgage on the Eatontown property.
In sum, the plaintiffs' loss can only be remedied in their action against Blanchard. Chicago Title is entitled to summary judgment. It is so ordered.