**In re VICTORY CORRUGATED CONTAINER CORPORATION OF NEW JERSEY, Debtor.**

**Bankruptcy No. 94–34946.**

United States Bankruptcy Court, D. New Jersey.

June 27, 1995.

374

Sam Della Fera, Jr., Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ, for debtor.

Frank Peretore, Peretore & Peretore, Sparta, NJ, for Tilden Financial Corp.

Gesuele J. Lodato, Fink & Rosner, Clark, NJ, for Alan B. Loeser & Co.

Elizabeth J. Gorman, LeBoeuf, Lamb, Green & MacRae, Newark, NJ, and Todd Ruskamp, Shook, Hardy & Bacon P.C., Kansas City, MO, for Lawrence Paper Co.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

## I. INTRODUCTION

This will constitute the court's decision on a motion by the Lawrence Paper Company ("LPC") to enforce the terms of a sale and a cross-motion by Tilden Financial Corporation ("Tilden") for sanctions against LPC and/or auctioneer Alan P. Loeser and Company ("Loeser"). This court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 151. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O). The court reserved decision on the parties' motions at a hearing held on April 10, 1995. For the reasons that follow, LPC's motion is granted and Tilden's cross-motion is denied.

## II. FINDINGS OF FACT

The court signed an order on September 1, 1994 authorizing an auction sale of obsolete machinery and equipment ("the equipment") owned by debtor Victory Corrugated Container Corp. of N.J. ("debtor") and setting forth terms for the auction sale. The subject equipment was encumbered by approximately $13 million in liens held by a number of creditors. The order specifically provided that the sale would be free and clear of such liens, with valid liens, if any, to attach to the proceeds of sale.

The order specified that the equipment would be included in the auction sale unless a secured creditor chose to exclude its collateral from the sale. No other restrictions were placed upon the auctioneer's ability to sell the equipment. The order did specify, however, that if equipment was offered for sale and no bids were received, that equipment would be deemed abandoned to the creditor with a lien on it.

The auction sale took place on October 12, 1994 at debtor's warehouses located in both Linden and Roselle, New Jersey. Representatives from Tilden and LPC, among others, attended the auction. During the auction, several pieces of machinery subject to Tilden's security interests, including a Langston Folder Gluer ("the Gluer"), were offered for sale. It is undisputed that no bids were submitted for the Gluer during the auction.

Upon completion of the auction, Loeser approached LPC's representatives and asked them to make an offer for certain equipment which had not been sold at the auction, including the Gluer.[1] LPC made an offer of $10,600 for certain equipment including the Gluer. Loeser accepted this offer and LPC thereafter forwarded payment to Loeser. The debtor is currently holding those funds pending the outcome of these motions.

Despite LPC's payment, LPC has not been able to obtain possession of the subject machinery. When LPC attempted to take delivery of the machine, its attempt was blocked by Tilden, which had not authorized the post-auction sale. Tilden argued that it was entitled to possession because, *inter alia*, the subject machinery was not bid upon at the auction and was therefore deemed abandoned to Tilden. When LPC and Tilden reached an impasse as to who would take possession, Tilden phoned Loeser. There is no dispute that Loeser thereafter authorized a release of the subject machinery to Tilden.

## III. CONCLUSIONS OF LAW

### A. LPC's MOTION TO ENFORCE THE SALE TERMS

The question for the court to determine on this motion is whether LPC is entitled to enforce the sale terms. It is undisputed that LPC did not bid on the Gluer during the active solicitation of bids at the auction. LPC argues, however, that its post-auction offer constituted the winning auction bid on the machine and that the sale must therefore be enforced. Alternatively, LPC argues that even if its bid did not occur as part of the auction, the sale should be enforced because

---

1. The affidavit of Alan M. Hill, president of LPC, states that Alan Loeser approached Mr. Hill and the affidavit of Mr. Loeser is silent as to who approached whom. Mr. Loeser's attorney stated at oral argument that he did not know who approached whom. The court finds from the uncontradicted certification of Mr. Hill that Mr. Loeser approached Mr. Hill, although it makes no difference to the outcome of these matters.

the auctioneer exercised apparent authority to sell the machine on behalf of Tilden.

### 1. LPC's OFFER DID NOT OCCUR DURING THE AUCTION SALE

The court rejects LPC's assertion that it submitted the winning bid for the Gluer at the auction. An auction is a sale in which competitive bidding is utilized as a means of procuring the best and highest possible price for property being sold. 7 Am.Jur.2d *Auctions and Auctioneers* § 21, at 380 (1980); 7A C.J.S. *Auctions and Auctioneers* § 2, at 853–54 (1980); *Black's Law Dictionary* 130 (6th ed. 1990). The touchstone of an auction sale is the presence of competitive bidding. *See Bassford v. Trico Mortgage Co., Inc.*, 273 N.J.Super. 379, 384, 641 A.2d 1132 (Law Div.1993) ("An auction is a public sale to the highest bidder.") (citation omitted), *aff'd*, 273 N.J.Super. 228, 641 A.2d 1054 (App.Div.1994). The agreement between Loeser and LPC was, however, a post-auction private sale in which no other parties were asked to make competing bids. LPC's argument that its offer was the winning bid at the auction is therefore without merit.

### 2. THE POST–AUCTION PRIVATE SALE DID NOT REQUIRE SEPARATE NOTICE

Tilden contends that Loeser's private sale of the Gluer to LPC is void because it violated both the order authorizing the auction sale and the notice requirements of the Bankruptcy Code and Rules.

The court rejects that argument. Every creditor of the debtor received notice of the auction pursuant to Fed.R.Bankr.P. 2002 and 6004. In view of the fact that it is apparently customary for auctioneers to engage in post-auction private sales of items not sold during an auction, *see infra* at 377–378 & n. 3, the court finds that the notice which was given was also sufficient to apprise creditors of the possibility of a post-auction private sale.

Moreover, the terms of the order authorizing the auction sale provided that equipment not bid upon during the auction would be deemed abandoned to the creditor holding a security interest therein. The Gluer had therefore become Tilden's property at the conclusion of the auction and was no longer property of the estate. *See* 11 U.S.C. § 554. Bankruptcy Code § 363(b) and the notice requirements of Fed.R.Bankr.P. 2002 and 6004 do not apply to property in which the bankruptcy estate no longer has an interest. *See, e.g., Tambay Trustee, Inc. v. Dickman (In re Simicich)*, 71 B.R. 48, 50 (Bankr. M.D.Fla.1987) (pointing out that § 363 is inapplicable to property which is not property of the estate). Loeser's post-auction private sale of Tilden's Gluer to LPC therefore did not require any further notice to the debtor's other creditors.

### 3. LOESER WAS VESTED WITH APPARENT AUTHORITY TO BIND TILDEN TO A POST–AUCTION PRIVATE SALE

LPC argues in the alternative that even if the sale was not part of the auction and the Gluer had become Tilden's property by operation of the September 1 order, Loeser nonetheless possessed apparent authority to sell the Gluer to LPC on behalf of Tilden. In support, LPC states that Tilden placed tags on its equipment on which it had liens, thus indicating to all that Loeser was authorized to sell the equipment. Moreover, LPC alleges that auctioneers commonly sell items after an auction in private sales, and that it was therefore reasonable to believe that Loeser was vested with authority to sell the equipment on Tilden's behalf.

The apparent agency doctrine applies in cases where the "principal" engages in acts or manifestations indicating that an "agent" is authorized to operate on the principal's behalf, even though not actually authorized. *Sears Mortgage Corp. v. Rose*, 134 N.J. 326, 338, 634 A.2d 74 (1993). *See Barticheck v. Fidelity Union Bank/First Nat'l State*, 680 F.Supp. 144, 149 (D.N.J.1988). An apparent agent can bind a principal only where the third party actually relies upon the "principal's" acts or manifestations in accepting the apparent agent's authority. *Sears Mortgage Corp.*, 134 N.J. at 338, 343, 634 A.2d 74; *N. Rothenberg & Son, Inc. v. Nako*, 49 N.J.Super. 372, 381–83, 139 A.2d 783

(App.Div.1958); *Nappen v. Blanchard,* 210 N.J.Super. 655, 663, 510 A.2d 324 (Law Div. 1986). The person seeking to prove an apparent authority agency bears the burden of proof. *Blaisdell Lumber Co., Inc. v. Horton,* 242 N.J.Super. 98, 103, 575 A.2d 1386 (App. Div.1990).

The facts of this case indicate that Loeser was vested with apparent authority to bind Tilden. By allowing its equipment to be sold at the auction, Tilden led others to believe that Loeser was authorized to sell the subject equipment. *See Barticheck,* 680 F.Supp. at 149 (applying New Jersey law and finding apparent authority where three plaintiffs voluntarily placed a fourth plaintiff in position where the defendant would believe the fourth plaintiff was the agent of the other three plaintiffs). Because Tilden acted affirmatively to create the impression that Loeser was its agent, Tilden should not be permitted to now deny Loeser's agency. *See Wilzig v. Sisselman,* 209 N.J.Super. 25, 35, 506 A.2d 1238 (App.Div.) (noting that apparent agency doctrine is closely related to doctrine of estoppel), *certif. denied,* 104 N.J. 417, 517 A.2d 415 (1986).

This conclusion follows even though Loeser's sale occurred after the auction had concluded. One New Jersey court's discussion is instructive on this point:

> As between the principal and third persons the true limit of the agent's power to bind the principal is the apparent authority with which the agent is invested. The principal is bound by the acts of the agent within the apparent authority which he knowingly permits the agent to assume, or which he holds the agent out to the public as pos-

sessing. And the reason is that to permit the principal to dispute the authority of the agent in such cases would be to enable him to commit a fraud upon innocent persons.

> The question in every such case is whether the principal has, by his voluntary act, placed the agent in such a situation that a person of ordinary prudence, conversant with business usages, and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question. . . .

*N. Rothenberg & Son, Inc.,* 49 N.J.Super. at 380, 139 A.2d 783 (quoting *J. Wiss & Sons Co. v. H.G. Vogel Co.,* 86 N.J.L. 618, 621, 92 A. 360 (E & A 1914)) (citations omitted). *See Restatement (Second) of Agency* § 49 cmt. c (1957).[2] There can be no denying that Tilden permitted Loeser to serve as auctioneer of Tilden's equipment. Moreover, the proofs in this case show that persons conversant with the business of auctions could reasonably presume that Loeser possessed authority to conduct a post-auction private sale of equipment at the auction site.[3] Because persons acquainted with the business of auction sales would presume that Loeser possessed post-auction sale authority, Loeser's agency therefore extended beyond the auction to include the post-auction sale. Since LPC's president who attended the auction in question was familiar with common auction practices, the court concludes that LPC relied upon Tilden's inclusion of the Gluer in the auction as the basis for accepting Loeser's authority to sell Tilden's equipment after the auction. The reliance element has been met in this case. *See Sears Mortgage Corp.,* 134 N.J. at 343, 634 A.2d 74.

---

**2.** According to the *Restatement:*

> If a principal puts an agent into, or knowingly permits him to occupy, a position in which according to the ordinary habits of persons in the locality, trade or profession, it is usual for such an agent to have a particular kind of authority, anyone dealing with him is justified in inferring that he has such authority, in the absence of reason to know otherwise. The content of such apparent authority is a matter to be determined from the facts.

*Restatement (Second) of Agency* § 49 cmt. c (1957).

**3.** *Compare Affidavit of Alan M. Hill* (March 13, 1995) (auctioneers commonly engage in post-

auction private sales) *and Affidavit of Alan D. Loeser* (April 3, 1995) (auctioneer did not take any inappropriate actions at the auction sale) *with Tilden Letter Brief* (March 31, 1995) (admitting that post-auction private sales by auctioneers "may be common elsewhere in the business world"). Finally, Loeser's attorney stated on the record that "[a]s far as we're concerned, this [practice of post-auction private sales by an auctioneer] is not only a common practice, there's nothing illegal about it. . . . It is common practice apparently to get rid of equipment that there was no bids taken on." *Transcript of Hearing Held on April 10, 1995,* at 17–18 (April 19, 1995).

■ The court rejects Tilden's argument that the state law doctrine of apparent authority is not applicable to a federal bankruptcy law proceeding. Whether Loeser exercised apparent authority on behalf of Tilden is a question of state law. It is well settled that bankruptcy courts must, in the absence of countervailing federal interests, utilize state law in determining parties' competing rights in a bankruptcy proceeding. *See In re Roach*, 824 F.2d 1370, 1373–74 (3d Cir.1987); *see also Official Committee of Unsecured Creditors v. Action Industries, Inc. (In re Phar–Mor Securities Litigation)*, 178 B.R. 692, 694 (W.D.Pa.1995). Because there are no countervailing federal interests involved with the agency question presented here, it is clear that New Jersey state law should supply the rule of decision in this case.

The court thus concludes that LPC purchased the Gluer and is entitled to possession of it. Loeser was vested with apparent authority to bind Tilden to a post-auction private sale of the Gluer, and did so. This court will exercise its equitable power to enforce the terms of the auction sale. *See, e.g., In re Karpe*, 84 B.R. 926, 933 (Bankr.M.D.Pa.1988) (utilizing bankruptcy court's equitable power to specifically enforce Code § 363 sale). Tilden shall turn the Gluer over to LPC. LPC shall be entitled to recover from Tilden and Loeser any additional delivery costs incurred as a result of Tilden's removal of the machinery from the debtor's warehouse.

### B. TILDEN'S MOTION FOR ATTORNEY FEES AND SANCTIONS AGAINST LPC AND LOESER

Tilden's cross-motion seeks sanctions and reimbursement of its attorney fees from Loeser and/or LPC. According to Tilden, Loeser had no actual authority to sell the Gluer to LPC in a post-auction private sale. Moreover, Tilden argues that Loeser sold the machine without regard to specific "upset prices" upon which Loeser and Tilden allegedly agreed prior to the sale. Finally, Tilden argues that LPC may have acted in bad faith by purchasing the machine with knowledge that the auction had ended.

#### 1. TILDEN'S MOTION SEEKING ATTORNEY FEES AND SANCTIONS AGAINST LPC

■ Tilden's motion will be denied as to LPC. The record does not indicate any bad faith on the part of LPC. Instead, all that is revealed in the facts is the existence of a bona fide dispute between Tilden and LPC as to the ownership of the machinery at issue. Attorney fees and sanctions are not to be awarded in such circumstances.

#### 2. TILDEN'S MOTION SEEKING ATTORNEY FEES AND SANCTIONS AGAINST LOESER

■ Tilden's entitlement to sanctions and/or attorney fees from Loeser is inadequately developed on this motion. Moreover, if Loeser sold the Gluer without authority, Tilden may be entitled to damages from Loeser.[4] The measure of damages would presumably be any difference between the value of the Gluer and the sale price.[5]

There are factual disputes regarding the issues of whether Loeser had actual authority to sell the Gluer to LPC in a post-auction private sale and as to the value of the Gluer. In addition, it is unclear from the record how much of the $10,600 which LPC paid was

---

**4.** *See Heritage Bank v. Vilsmeier Auction Co.*, 218 N.J.Super. 440, 442, 527 A.2d 970 (Law Div. 1986) (auctioneer liable for conversion where sold property without consent or knowledge of secured party). *See generally* 7 Am.Jur.2d *Auctions and Auctioneers* § 65 at 416–17 (1980) (stating that auctioneer may be held liable for breach of contract where auctioneer fails to follow instructions); 7A C.J.S. *Auctions and Auctioneers* § 23 at 886–87 (1980) (same).

**5.** This determination is based upon the general measure of damages applicable to conversion actions, *see, e.g., Foley Mach. Co. v. Amland Contractors, Inc.*, 209 N.J.Super. 70, 78, 506 A.2d 1263 (App.Div.1986) (liability for conversion is based upon the market value of the item converted at the time and place the conversion occurred), and the general contract law principle that an injured party must be put in as good a position as that party would have been had the contract been performed as promised. *Wolpaw v. General Accident Ins. Co.*, 272 N.J.Super. 41, 46, 639 A.2d 338 (App.Div.), *certif. denied*, 137 N.J. 316, 645 A.2d 143 (1994).

allocable to the Gluer, since LPC also purchased other items in that transaction. The court concludes that the matters at issue between Tilden and Loeser should be resolved in an adversary proceeding by Tilden against Loeser.

## IV. CONCLUSION

LPC is entitled to enforce the terms of the sale. An additional hearing will be held, if necessary, for the purpose of determining LPC's entitlement to additional delivery charges occasioned by Tilden's removal, with Loeser's permission, of the Gluer from debtor's warehouse.

Tilden's motion seeking attorney fees and sanctions against LPC is denied without prejudice to Tilden's right to file an adversary proceeding against Loeser.

The attorney for LPC shall submit an order within ten (10) days on notice pursuant to D.N.J.Bankr.Ct.R. 4(c).