47 N.J. Super. 224 (1957)
135 A.2d 702
ROBERT HODDESON AND JOAN HODDESON, PLAINTIFFS-RESPONDENTS,
v.
KOOS BROS., A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 30, 1957.
Decided October 30, 1957.
*227 Before Judges CLAPP, JAYNE and HUGHES.
Mr. Maurice Jordan Price argued the cause for appellant (Messrs. Braff, Litvak & Ertag, attorneys).
Mr. Dickinson R. Debevoise argued the cause for respondents (Messrs. Riker, Emery & Danzig, attorneys).
The opinion of the court was delivered by JAYNE, J.A.D.
The occurrence which engages our present attention is a little more than conventionally unconventional in the common course of trade. Old questions appear in new styles. A digest of the story told by Mrs. Hoddeson will be informative and perhaps admonitory to the unwary shopper.
The plaintiff Mrs. Hoddeson was acquainted with the spacious furniture store conducted by the defendant, Koos Bros., a corporation, at No. 1859 St. George Avenue in the City of Rahway. On a previous observational visit, her eyes had fallen upon certain articles of bedroom furniture which she ardently desired to acquire for her home. It has been said that "the sea hath bounds but deep desire hath none." Her sympathetic mother liberated her from the grasp of despair and bestowed upon her a gift of $165 with which to consummate the purchase.
It was in the forenoon of August 22, 1956 that Mrs. Hoddeson, accompanied by her aunt and four children, happily journeyed from her home in South River to the defendant's store to attain her objective. Upon entering, she was greeted by a tall man with dark hair frosted at *228 the temples and clad in a light gray suit. He inquired if he could be of assistance, and she informed him specifically of her mission. Whereupon he immediately guided her, her aunt, and the flock to the mirror then on display and priced at $29 which Mrs. Hoddeson identified, and next to the location of the designated bedroom furniture which she had described.
Upon confirming her selections the man withdrew from his pocket a small pad or paper upon which he presumably recorded her order and calculated the total purchase price to be $168.50. Mrs. Hoddeson handed to him the $168.50 in cash. He informed her the articles other than those on display were not in stock, and that reproductions would upon notice be delivered to her in September. Alas, she omitted to request from him a receipt for her cash disbursement. The transaction consumed in time a period from 30 to 40 minutes.
Mrs. Hoddeson impatiently awaited the delivery of the articles of furniture, but a span of time beyond the assured date of delivery elapsed, which motivated her to inquire of the defendant the cause of the unexpected delay. Sorrowful, indeed, was she to learn from the defendant that its records failed to disclose any such sale to her and any such monetary credit in payment.
Such were the essentialities of the narrative imparted to the judge and jury in the Union County District Court, where Mrs. Hoddeson and her husband obtained a final judgment against the defendant in reimbursement of her cash expenditure. The testimony of her aunt was corroborative of that of Mrs. Hoddeson.
Although the amount of money involved is relatively inconsiderable, the defendant has resolved to incur the expense of this appeal. This Division has heretofore had occasion to state that justice is not qualified by the monetary importance of the controversy. Series Publishers, Inc. v. Greene, 9 N.J. Super. 166 (App. Div. 1950). Obviously, the endeavor of the defendant is to elicit from us a precedential opinion concerning a merchant's liability in the exceptional *229 circumstances disclosed by the evidence to which we have already alluded, and by the supplementary evidence to which we shall presently refer.
It eventuated that Mrs. Hoddeson and her aunt were subsequently unable positively to recognize among the defendant's regularly employed salesmen the individual with whom Mrs. Hoddeson had arranged for the purchase, although when she and her aunt were afforded the opportunities to gaze intently at one of the five salesmen assigned to that department of the store, both indicated a resemblance of one of them to the purported salesman, but frankly acknowledged the incertitude of their identification. The defendant's records revealed that the salesman bearing the alleged resemblance was on vacation and hence presumably absent from the store during the week of August 22, 1956.
As you will at this point surmise, the insistence of the defendant at the trial was that the person who served Mrs. Hoddeson was an impostor deceitfully impersonating a salesman of the defendant without the latter's knowledge.
It was additionally disclosed by the testimony that a relatively large number of salesmen were employed at the defendant's store, and that since they were remunerated in part on a sales commission basis, there existed considerable rivalry among them to serve incoming customers; hence the improbability of the unnoticed intrusion of an impersonator.
Fortifying the defense, each of the five salesmen, but not every salesman, denied that he had attended Mrs. Hoddeson on the stated occasion, and the defendant's comptroller and credit manager verified the absence in the store records of any notation of the alleged sale and of the receipt of the stated cash payment.
The credibility of the testimony of both Mrs. Hoddeson and her aunt was thus shadowed. The trial judge transmitted to the jury for determination the simple factual issue whether Mrs. Hoddeson and her co-plaintiff had established by a preponderance of the credible evidence that the $168.50 was paid in fact to an employee of the defendant; otherwise, the defendant should be acquitted of liability.
*230 The jury resolved that controversial issue in favor of the plaintiffs. The defendant's application for a new trial was denied by the trial judge, who announced:
"It is my conclusion that the evidence of the circumstances proved by the plaintiff warranted a finding by the jury that the person who received the money was an employee of the defendant."
Does it clearly and unequivocally appear that the action of the trial judge constituted a manifest denial of justice under the law? Hartpence v. Grouleff, 15 N.J. 545, 549 (1954).
The ground now asserted on behalf of the defendant for a reversal of the judgment is that there was a deficit of evidence to support the conclusion that a relationship of master and servant existed between the man who served and received the money from Mrs. Hoddeson and the defendant company.
There can be no doubt that the existence of the alleged relationship, or in the alternative an estoppel by the defendant to deny its existence, was an essential element of the legal right of the plaintiff, Mrs. Hoddeson, to recover her monetary disbursement from the company. Neither is it to be doubted that such a relationship of agency, actual or apparent, can be proved by means of circumstantial evidence.
We do not hastily yield to the temptation immediately to adopt the postulate that the person who waited upon Mrs. Hoddeson was without question a humbugger unassociated with the defendant. We recognize that the jurors, pursuant to the directions of the court, weighed on the scales of reasonable probabilities the inferences anent that issue which were to them derivable from the circumstantial evidence relating on the one hand to the described behavior and deportment of the individual and on the other to the revelatory state of the defendant's records.
Perhaps in reality the jurors did not read the scales mistakenly, and so initially we pause to examine the probative *231 range of the circumstantial evidence. True, in the present case there was evidence that the person whose identity is undisclosed approached Mrs. Hoddeson and her aunt in the store, publicly exhibiting the mannerisms of a salesman; inquired if he could be of service; upon being informed of the type of the articles in which Mrs. Hoddeson was interested, he was not only sufficiently acquainted with their description, but also where in the department they were respectively on display, guiding them without hesitation to the location of the mirror and then to that of the indicated bedroom furniture; he represented that those articles were not then available in stock, which significantly the store records disclosed to be true; his prophetic representation concerning their prospective arrival in stock proved to be prescient, unless he gleaned that information from the price tag; he accurately calculated their true sales prices and openly received the cash. Those activities precisely characteristic of the common experiences and practices in the trade were conspicuously pursued in market overt during a period of 30 to 40 minutes.
In the consideration of the propriety of the defendant's motion for an involuntary dismissal of the action, we are not at liberty to suspect that the verified narrative of Mrs. Hoddeson, corroborated by her aunt, was purely imaginative or artfully inventive, but rather to regard it as a trustworthy revelation of the factual events to the extent of her knowledge. Gentile v. Public Service Coordinated Transport, 12 N.J. Super. 45, 49 (App. Div. 1951).
In the study of the circumstantial evidence, its perceptible legal deficiency and inadequacy inhere in the limitations of its disclosures. Obviously it confines its information solely to the activities of the supposed salesman. It does not embrace or, indeed, touch any manifestations whatever emanating from the defendant tending to indicate its conference of authority, actual or apparent, upon the alleged salesman.
Where a party seeks to impose liability upon an alleged principal on a contract made by an alleged agent, as here, the party must assume the obligation of proving *232 the agency relationship. It is not the burden of the alleged principal to disprove it.
Concisely stated, the liability of a principal to third parties for the acts of an agent may be shown by proof disclosing (1) express or real authority which has been definitely granted; (2) implied authority, that is, to do all that is proper, customarily incidental and reasonably appropriate to the exercise of the authority granted; and (3) apparent authority, such as where the principal by words, conduct, or other indicative manifestations has "held out" the person to be his agent.
Obviously the plaintiffs' evidence in the present action does not substantiate the existence of any basic express authority or project any question implicating implied authority. The point here debated is whether or not the evidence circumstantiates the presence of apparent authority, and it is at this very point we come face to face with the general rule of law that the apparency and appearance of authority must be shown to have been created by the manifestations of the alleged principal, and not alone and solely by proof of those of the supposed agent. Assuredly the law cannot permit apparent authority to be established by the mere proof that a mountebank in fact exercised it.
The plaintiffs here prosecuted an action in assumpsit, alleging a privity of contract with the defendant through the relationship of agency between the latter and the salesman. The inadequacy of the evidence to prove the alleged essential element of agency obliges us to reverse the judgment.
But prelude, as we may do here, a case in which a reconciliation of the factual circumstances disclosed by the evidence of both the plaintiffs and the defendant exhibits an unalleged and an undetermined justiciable cause of action, should the plaintiffs, by our reversal of the judgment, be conclusively denied the opportunity, auspicious or not, appropriately and not mistakenly, to seek judicial relief?
Let us hypothesize for the purposes of our present comments that the acting salesman was not in fact an employee *233 of the defendant, yet he hebaved and deported himself during the stated period in the business establishment of the defendant in the manner described by the evidence adduced on behalf of the plaintiffs, would the defendant be immune as a matter of law from liability for the plaintiffs' loss? The tincture of estoppel that gives color to instances of apparent authority might in the law operate likewise to preclude a defendant's denial of liability. It matters little whether for immediate purposes we entitle or characterize the principle of law in such cases as "agency by estoppel" or "a tortious dereliction of duty owed to an invited customer." That which we have in mind are the unique occurrences where solely through the lack of the proprietor's reasonable surveillance and supervision an impostor falsely impersonates in the place of business an agent or servant of his. Certainly the proprietor's duty of care and precaution for the safety and security of the customer encompasses more than the diligent observance and removal of banana peels from the aisles. Broadly stated, the duty of the proprietor also encircles the exercise of reasonable care and vigilance to protect the customer from loss occasioned by the deceptions of an apparent salesman. The rule that those who bargain without inquiry with an apparent agent do so at the risk and peril of an absence of the agent's authority has a patently impracticable application to the customers who patronize our modern department stores. Vide, 2 C.J.S. Agency § 93, p. 1193.
Our concept of the modern law is that where a proprietor of a place of business by his dereliction of duty enables one who is not his agent conspicuously to act as such and ostensibly to transact the proprietor's business with a patron in the establishment, the appearances being of such a character as to lead a person of ordinary prudence and circumspection to believe that the impostor was in truth the proprietor's agent, in such circumstances the law will not permit the proprietor defensively to avail himself of the impostor's lack of authority and thus escape liability for the consequential loss thereby sustained by the customer.
*234 The reported decisions implicating precisely such uncommon occurrences are not numerous. Of them, the following will suffice to illustrate the import of our comments. Kanelles v. Locke, 12 Ohio App. 210 (Ct. App. 1919), where an impostor acting as the hotel clerk received at the desk for safe-keeping money and jewelry from a guest; Miltenberger v. Hulett, 188 Mo. App. 273, 175 S.W. 111 (K.C. Ct. App. 1915), where an incoming railroad passenger delivered his trunk check to an impostor acting in the office of the transfer agency; Luken v. Buckeye Parkin Corporation, 77 Ohio App. 451, 68 N.E.2d 217 (Ct. App. 1945), where a motorist entrusted her vehicle to an impostor acting as the attendant at a parking lot. Consult also, Mechem, Outline of Agency (4th ed.) pp. 57, 59, 61 and 72; 1 Mechem On Agency (2d ed.), 534, § 752; 34 Mich. L. Rev. 404; 29 Yale L.J. 859; 5 Columbia L. Rev. 36; 1 Restatement of Agency 25, § 8, comm. a.
Although intrinsically distinguishable, see Livingston v. Fuhrman, 37 A.2d 747 (D.C. Mun. Ct. App. 1944); Barron v. McLellan Stores Co., 310 Mass. 778, 39 N.E.2d 953 (Sup. Jud. Ct. 1942); Hannon v. Siegel-Cooper Co., 167 N.Y. 244, 60 N.E. 597, 52 L.R.A. 429 (Ct. App. 1901); Jackson v. Fort Pitt Hotel, Inc., 162 Pa. Super. 271, 57 A.2d 696 (Super. Ct. 1948); Mulhern v. Public Auto Parks, 296 Ill. App. 238, 16 N.E.2d 157 (App. Ct. 1938).
Let it not be inferred from our remarks that we have derived from the record before us a conviction that the defendant in the present case was heedless of its duty, that Mrs. Hoddeson acted with ordinary prudence, or that the factual circumstances were as represented at the trial.
In reversing the judgment under review, the interests of justice seem to us to recommend the allowance of a new trial with the privilege accorded the plaintiffs to reconstruct the architecture of their complaint appropriately to project for determination the justiciable issue to which, in view of the inquisitive object of the present appeal, we have alluded. We do not in the exercise of our modern *235 processes of appellate review permit the formalities of a pleading of themselves to defeat the substantial opportunities of the parties. Cf. Marschalk v. Weber, 11 N.J. Super. 16, 26 (App. Div. 1950), certification denied 6 N.J. 569 (1951).
Reversed and new trial allowed.