**SEARS, ROEBUCK & CO. _v._ STOVER.** ▮

(No. 86 CV 25373 — Decided March 5, 1987.)

Hamilton County Municipal Court.

_Stuart Tobin,_ for plaintiff.
_Phyllis Stover, pro se._

PAINTER, J. This matter came on for trial to the court, neither party disputing the relevant facts.

For many years Willard Hughes maintained a charge account with plaintiff Sears, Roebuck & Co., making many purchases and generally paying his account when due. Defendant Phyllis Stover is the daughter of Willard Hughes, and lived with him for some period of time shortly before his death. Upon his death, Willard Hughes owed Sears $3,311.08. Though his account may have been current at the time of his death, he left no assets, and no estate was opened.

Defendant admits that of the above amount, purchases totalling $862.07 were made against Mr. Hughes' account, with the sales slips having been signed by defendant Phyllis Stover. The defendant testified that her father sometimes accompanied her to Sears, gave her the card and told her to buy whatever she needed. Sometimes Mr. Hughes would make the purchases himself, sign for them and give her the merchandise, and sometimes he would give her the card while he shopped elsewhere. Also, defendant testified that sometimes her father gave her the card and told her to go to Sears for him and make whatever purchases she desired.

Defendant Stover never signed any credit agreement with Sears, and plaintiff's only contention is that by signing the sales tickets, defendant became liable to Sears for payment of those purchases.

The defendant herein is clearly not

1

liable to Sears by means of any direct contractual obligation. *Sears, Roebuck & Co.* v. *Ragucci* (1985), 203 N.J. Super. 82, 495 A. 2d 923. However, plaintiff asserts that under the theory of unjust enrichment, defendant should pay the charges for which she signed.

A case which has some bearing on the above facts, but which is distinguishable from the present case, is *Fifth Third Bank/Visa* v. *Gilbert* (M.C. 1984), 17 Ohio Misc. 2d 14, 17 OBR 406, 478 N.E. 2d 1324, a decision by Judge Hogan of this court. In that case, a daughter was held liable for charges incurred on her father's Visa card, "on principles of implied contract law." However, the distinguishing factor in that case is that the daughter, *without* the father's consent or agreement, had somehow either obtained the card or managed to make purchases without possession of it. The court held that the father, not having authorized the charges, was not liable for the payment, but the daughter, in making unauthorized purchases became liable therefore. Obviously, the correct result was reached in that case — but here we have an entirely different fact pattern.

Plaintiff cites the case of *Andy's Glass Shops, Inc.* v. *Leelanau Realty* (1977), 50 Ohio App. 2d 355, 4 O.O. 3d 312, 363 N.E. 2d 601, for the proposition that defendant should be liable to plaintiff on the theory of unjust enrichment. In that case, a lessee contracted to repair glass windows broken during its occupancy, but then did not pay for the service. The court held that the lessor was responsible for payment to the plaintiff because the lessor received a benefit (repair of its real estate) which was unjustly retained without payment. The court found such an obligation on the part of the lessor pursuant to a duty imposed by law where no contract existed between the parties, and where the intent of the parties did not show such an obligation. See, also, *Idaho Lumber, Inc.* v. *Buck* (App. 1985), 109 Idaho 737, 710 P. 2d 647. It seems to this court that improvements to real estate are distinguishable from the purchasing of household goods or general merchandise.

In the case of *Cleveland Trust Co.* v. *Snyder* (1978), 55 Ohio App: 2d 168, 9 O.O. 3d 329, 380 N.E. 2d 354, a bank, being the issuer of a credit card, sued the wife of the cardholder who had been issued a separate card but had not signed any agreement to be responsible for her husband's obligations. The court ruled that, under the language of the particular agreement involved, the wife was not a "cardholder." Evidently, the cardholder (husband) had been issued the card by the bank and then later "brought his wife there to set in motion the proceedings for her to receive a card, without her filling out and signing an application. The card was issued to her under his account and so reflected on the card given her. She used it and her purchases were charged to his account which he paid. He received advances which were charged to his account and which he chose not to pay." *Cleveland Trust, supra,* at 177, 9 O.O. 3d at 334, 380 N.E. 2d at 360.

The bank then sought to hold the wife liable for the cash advances. Obviously, the *Cleveland Trust* case is not on point to the extent that the wife therein did not sign for the advances, and thus the court did not consider the issue of unjust enrichment. However, the court stated that only the husband "* * * as a cardholder received the statement; only he could challenge its accuracy, and only he need be notified of any change on the agreement." *Id.* at 177-178, 9 O.O. 3d at 334, 381 N.E.

2d at 360. At least that situation is similar to our case. The court held that it was clear that the cardholder was liable for any charges to his account made by himself or by a holder of a related card, but whether the holder of the related card is liable was "shrouded in doubt." *Cleveland Trust, supra,* at 178, 9 O.O. 3d at 334, 380 N.E. 2d at 360. The court therein found the defendant not liable.

No cases involving credit cards and unjust enrichment have been cited to the court, nor has our exhaustive research discovered any. This court does not believe that the defendant was unjustly enriched; if anything, Sears made more profits because Mr. Hughes let defendant make additional purchases on his account. Only upon his death without assets did the possibility of "unjust enrichment" arise. Defendant had never before been called upon to pay for Sears charges. It is clear to this court that Sears was relying upon the credit of Mr. Hughes, and not upon the credit of Phyllis Stover, given the fact that it knew nothing about her. Mr. Hughes was the party who received the bills, and, up until the time of his death, made the payments. This court can see little to distinguish this case from one in which Mr. Hughes might have made purchases on his credit card and then given the merchandise to his daughter. In effect, that was the situation here. We do not discern any intention upon Ms. Stover's part to be bound by the contract. Neither can this court imply a contract to pay for the goods purchased on another's account with the other's permission, simply because of a signature on a charge slip. Other than signing such a slip, the defendant herein had no connection with plaintiff and the court will not imply a contract in these circumstances.

*Judgment for defendant.*