242 N.J. Super. 98 (1990)
575 A.2d 1386
BLAISDELL LUMBER COMPANY, INC., PLAINTIFF-RESPONDENT,
v.
KAREN LYN HORTON, DEFENDANT-APPELLANT AND DANIEL CALVIN, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 22, 1990.
Decided June 26, 1990.
*99 Before Judges KING, SHEBELL and KEEFE.
Richard D. Forest, attorney for appellant (Richard D. Forest, on the brief).
No brief filed on behalf of respondent.
The opinion of the court was delivered by KING, P.J.A.D.
This is an appeal from a judgment of $925.25 entered in the Small Claims Division of the Special Civil Part in favor of the operator of a hardware store. The judgment was entered after a contested hearing in which defendant Karen Lyn Horton disputed that she was responsible for certain purchases made on her credit card by her acquaintance, Daniel Calvin, who had not been served and did not appear. The issue is whether *100 Horton is legally responsible under common-law agency principles to Blaisdell Lumber Company, the owner of the hardware store. We conclude that she is not.
Plaintiff brought this action in April 1989 to recover payment for purchases made at its hardware store with defendant Karen Horton's American Express (AMEX) credit card in June and July 1987. Defendant alleged that her former male friend, Daniel Calvin, made the purchases without her permission or authority. She said that he was never permitted to use her AMEX card but stole it from her.
Bruce Blaisdell, vice-president of Blaisdell Lumber Company of Red Bank, testified that seven transactions, resulting in AMEX credit card charges totalling $925.25, were made at his store from June 18 to July 18, 1987. He handled the first transaction personally on June 18. He was the only witness for plaintiff. He said that during the June 18 transaction Calvin signed only his name on the two charge slips for that date after "a woman" handed the credit card to Calvin. Only Karen Horton's name and signature appeared on the credit card itself. Blaisdell did not ask the woman either to sign the charge slips or to identify herself. At trial Blaisdell could not identify defendant Horton as the woman with Calvin on the day of the first purchase. The other six purchases were made by Calvin from other clerks in the hardware store on separate dates continuing through July 18, 1987. There was no proof offered at trial concerning the circumstances surrounding those purchases other than the credit card slips also signed by Calvin only in his own name.
Blaisdell said that in August 1987 American Express refused to reimburse Blaisdell Lumber because Horton had "denied the signature" in early August by notifying AMEX that it was not her signature on the card slips. Blaisdell then telephoned Horton. He claimed that she said that the signature was not valid, that she had never reported her card stolen, and that "the bill" was Daniel Calvin's. Blaisdell testified that Horton also *101 said that Calvin was out but that he would return soon and call him, suggesting to Blaisdell that the two were still living together. At the close of plaintiff's case, the defendant's motion to dismiss for failure to prove agency was denied.
Karen Horton then testified. She said that she had first met Daniel Calvin around Christmas 1986. He had moved into her apartment in Long Branch in January 1987. She testified that their "romance" abruptly ended in early March 1987 when Calvin stole her car, changed the bill of sale to his name, and drove off to Mississippi. At that time, on March 4, 1987, Horton signed a complaint in the Long Branch Municipal Court alleging that Calvin had stolen her car, a gasoline credit card, a brief case, and had obtained $4,000 from her by misrepresentation.
Calvin soon returned to Horton's New Jersey apartment and continued living there, although not on the same friendly and "romantic" terms as before. On August 11, 1987 Calvin pled guilty in the Long Branch Municipal Court to the offenses involving the March thefts. He was fined, received a suspended sentence and was ordered to make restitution.
Horton testified that in August 1987 she was at a gas station and realized that she could not pay for her gas as she was unable to find her AMEX card in her wallet. The attendant who knew Horton then told her that he had seen Calvin with the credit card that morning. Horton said that she immediately called AMEX and reported her card missing. She did not know for how long it had been gone. She said that a Ms. Douglas of AMEX's fraud control department told her and confirmed in writing that the balance due was $5,496 of which only $218 was Horton's legitimate charges. See Evid.R. 2(2). An AMEX memo to Horton, dated August 13, 1987, placed in evidence, corroborates Horton's testimony regarding her conversation with Douglas. Horton said that she then signed a criminal complaint against Calvin based on the AMEX fraud.
*102 Horton said she previously had hidden her credit cards in a metal box in her bedroom. After Calvin stole her car and her gas credit card in March, she began carrying her credit cards on her person in her wallet. She denied ever dealing with or going to Blaisdell Lumber. She denied any benefit from or receipt of the hardware items purchased from plaintiff. All of the Blaisdell charges (eight slips in all) were signed by Calvin in his name only.
Judgment was entered for plaintiff but, contrary to R. 1:7-4, no reasons were given. See Curtis v. Finneran, 83 N.J. 563, 569-570, 417 A.2d 15 (1980). Execution was stayed pending appeal. The failure of the trial judge to make any findings surely complicates our review of this matter. He did not tell us who he believed or why. He did not tell us what inferences he drew from the evidence. He just concluded that "she's [Horton] left with an obligation."
By way of background, in 1970 Congress enacted Title V of Public Law 91-508, part of the Truth in Lending Act, in order to regulate the credit card industry. 15 U.S.C.A. § 1602, §§ 1642-1644. This legislation limited credit card holder liability to $50 for "the unauthorized use of a credit card." 15 U.S.C.A. § 1643(a); Credit Card Service Corporation v. F.T.C., 495 F.2d 1004, 1006 (D.C. Cir.1974). The term "unauthorized use," as used in 15 U.S.C.A. § 1643(a), "means a use of a credit card by a person other than the cardholder who does not have actual, implied or apparent authority for such use and from which the cardholder receives no benefit." 15 U.S.C.A. § 1602(o). Except as provided in 15 U.S.C.A. § 1643 (up to $50), "a cardholder incurs no liability from the unauthorized use of a credit card." Id. at (d).
Since the issuer of the card here, AMEX, did not pay the plaintiff merchant, Blaisdell Lumber attempted to establish Daniel Calvin's apparent authority, under common law principles, to use Horton's credit. "Apparent authority imposes liability, not as a result of an actual contractual relationship, *103 but because of actions by a principal which have misled a third party into believing that a relationship of authority does, in fact, exist." Wilzig v. Sisselman, 209 N.J. Super. 25, 506 A.2d 1238 (App.Div. 1986), certif. den. 107 N.J. 109, 526 A.2d 181 (1987). In this respect the doctrine is closely related to estoppel. Ibid. The burden of proof is on the plaintiff to establish the apparent authority and the agency relationship. Hoddeson v. Koos Bros., 47 N.J. Super. 224, 231-232, 135 A.2d 702 (App. Div. 1957). The general rule of law is "that the apparency and appearance of authority must be shown to have been created by the manifestations of the alleged principal, and not alone and solely by proof of those of the supposed agent. Assuredly the law cannot permit apparent authority to be established by the mere proof that a mountebank in fact exercised it." Id. at 232, 135 A.2d 702. See also N. Rothenberg & Son, Inc. v. Nako, 49 N.J. Super. 372, 380-383, 139 A.2d 783 (App.Div. 1958). "Apparent authority will bind the purported principal only with respect to a third person to whom a manifestation of the defendant's consent to the holding out has been made known." Id. at 381, 139 A.2d 783.
In the case before us plaintiff Blaisdell Lumber proved that Calvin presented Horton's AMEX credit card on seven occasions between June 18 and July 18. On the first occasion, June 18, Blaisdell himself handled the transaction. The other six transactions took place on separate days, June 20 and 27, and July 7, 9, 18 and 30. Calvin signed the credit slip himself for each purchase. Horton never signed any of the credit slips. On June 18 Blaisdell made no effort to inquire of the woman with Calvin if she was the card owner, Karen Horton, to obtain any identification from her, or to get her signature on the credit slip. Indeed, at trial on May 12, 1989, Blaisdell could not identify the defendant Horton as the woman who accompanied Calvin on June 18, 1987. There had been no prior course of dealing between the parties such as to entitle plaintiff reasonably to presume Calvin's apparent authority to use Horton's credit card on his own signature. There is no doubt from *104 the AMEX records that Horton reported the card stolen in early August. The AMEX records in evidence also support Horton's testimony that Calvin ran up bills of over $5,000 on her credit card without her permission.
We thus have a situation where a merchant relied on Calvin's possession of Horton's credit card to procure goods worth $925. The merchant accepted Calvin's signature alone, not the card owner's, without any course of conduct to establish reasonable reliance and without any verification of or confirmation from the card owner. The merchant simply relied on the card and did nothing to protect itself. Horton denied receiving any benefit from the transaction and there seems no reason to doubt her. She has also corroborated her claim of theft of the card with documentation from the issuer AMEX dated August 13, 1987.
In this posture, we conclude as a matter of law that plaintiff did not establish that Calvin was defendant Horton's agent and acting on her behalf by express, implied[1] or apparent authority. N. Rothenberg & Son, Inc., 49 N.J. Super. at 385, 139 A.2d 783. Equally likely from the evidence is the conclusion that Calvin stole the card and used it without Horton's authorization. We conclude that mere possession of a credit card alone does not prove apparent authority in these circumstances.
The authorities we have encountered also seem to concur that mere use of a credit card by another in a transaction is not enough to foist liability automatically upon the owner. The controlling federal law stresses that "except as provided in this section [up to $50], a cardholder incurs no liability from the unauthorized use of a credit card." 15 U.S.C.A. § 1643. The *105 reported cases generally deal with liability of the owner to the issuer of the card but the general principles expressed would extend to merchants as well.
Fifth Third Bank/Visa v. Gilbert, 17 Ohio Misc.2d 14, 478 N.E.2d 1324 (Ohio Mun. 1984), is a case "in which the adversaries are a credit card company on one hand and a card holder on the other." Id. 478 N.E.2d at 1325. The court had to decide whether the use of the card was authorized and, if not, the liability of the card holder. The defendant John D. Gilbert testified that on May 9, 1983 he cancelled a previous VISA card which had been jointly held with his wife upon advice of his divorce counsel. A new application was processed on about June 6, 1983. Within 15 days a single new card was issued pursuant to the application with John D. Gilbert as the only authorized signature. Between June 15 and July 18, 1983 Gilbert's unemancipated daughter, Ann A. Gilbert, who had been residing separately with her mother, ran up charges of $1,166.22 on the new card. John Gilbert testified that he had retained exclusive possession of the new VISA card which had been mailed to his business address, that all charges made on it by Ann A. Gilbert were unauthorized, and that upon receipt of his July statement he promptly notified VISA and requested an investigation. "The real question presented here [the Ohio court noted,] concerns Mr. Gilbert's liability to VISA for Ann's purchases...." Id. at 1326. The Ohio court relied on the necessity of proving that the use of the card was authorized under 15 U.S.C.A. § 1643(b) and concluded that "the quantum of evidence produced by VISA [was] clearly insufficient to meet the requisite burden of proof." Gilbert, 478 N.E.2d at 1326. Ann Gilbert did not testify that she had her father's consent to use the card. No retail sales clerk was called to verify that she even had possession of the card when a purchase was made. The court concluded:
In short, the evidence points to the opposite conclusion of that advanced by Visa, to wit: that the use of the card was authorized. While the common-law doctrine of ostensible or apparent authority may have a bearing on a case such *106 as this, it is clear that apparent authority on the part of the agent cannot be established solely by the conduct of the agent, but must be traced to some act of the principal which clothed the agent with apparent authority. See 3 Ohio Jurisprudence 3d (1978) 92-93, Agency, Section 56. The plaintiff here has proved no such act on the part of Mr. Gilbert. [Id. at 1326.]
Where the apparent authority to use the credit card could not be attributed to the principal by the creditor, the claim failed.
Because tendency to protect the principal from the unauthorized use of credit from stolen cards is found in an early New Jersey case, Lit Bros. v. Haines, 98 N.J.L. 658, 121 A. 131 (Dist.Ct. 1923). There, the holder of a credit coin was held not liable for purchases made on it by a person who had stolen the coin where there was no contract of credit to bind the holder of the coin for such unauthorized purchases. The issuer of the credit coin, Lit Brothers Department Store, had a policy of permitting sales to the bearer of a credit coin who gave the correct name and address of the authorized holder. Our intermediate appellate court at that time refused to impose liability on the authorized holder who was ignorant of the store's policy. The court said that "no inference can be drawn from [the circumstance] that defendant contracted to pay for goods not purchased by her, but by anyone holding the coin whether lawfully or not. To bind her she must have so contracted, and she did not." Id. at 659-660. In the absence of any proof of an agreement that possession of the credit coin gave "any person presenting it ... the right to purchase goods on credit[,]" the issuer's claim failed. Id. at 660. See Annotation, "Liability of Holder of Credit Card or Plate for Purchases Made Thereon by Another Person," 15 A.L.R.3d 1086 (1967); see also Thomas v. Central Charge Service, Inc., 212 A.2d 533, 15 A.L.R.3d 1083 (Dist.Col.App. 1965), relying on Lit Bros. v. Haines, in exonerating the holder of a stolen credit card for purchases by the thief. Thomas, 212 A.2d at 534.
In Martin v. American Express, Inc., 361 So.2d 597 (Ct.App. Ala. 1978), the cardholder gave his credit card to a business associate. The cardholder claimed that he orally authorized use of the card up to $500 only. His associate ran up charges of *107 about $5,300. The cardholder denied signing the invoices and American Express sued him for the money owed on account of the associate's purchases. The appellate court affirmed the judgment for American Express. It found an "authorized use" under the Truth in Lending Act, 15 U.S.C.A. § 1602(o) and § 1643. The court concluded that once the card owner gave the card over "the authority to use it, if not actual, remained apparent even after [holder] McBride ignored [owner's] Martin's directions by charging over $500 to Martin's credit card account." Id. at 600. The protections of the Act were deemed inapplicable where the cardholder "voluntarily and knowingly allows another to use his card and that person subsequently misuses it." Id. at 601.
The Wisconsin Court of Appeals reached a similar result in Mastercard v. Town of Newport, 133 Wis.2d 328, 396 N.W.2d 345 (Ct.App. 1986). In that case, the issuing bank successfully appealed from a nominal $50 judgment against the Town of Newport. The town clerk used the credit card issued to the Town not only for authorized official purposes but also to charge hotel and restaurant expenses and clothing and gift shop purchases for her personal use. The court concluded that once the use of the card is authorized, misuse is not "unauthorized use" of the card since the card has not been lost or stolen. Authorized control of the card by the user was considered a sufficient manifestation to others to create an obligation by the cardholder. See also Cities Service Co. v. Pailet, 452 So.2d 319 (La. App. 1984).
The cases, though they generally involve claims by the issuer against the cardholder, not the merchant against the cardholder, do demonstrate that more must be proved to hold the cardholder liable than mere use of the card. Under our common-law agency principles, a merchant must prove some indicia of apparent authority and reasonable reliance thereon, especially where the use of credit is involved. See Bk. of America, Nat. Trust & Sav. Ass'n v. Horowytz, 104 N.J. Super. 35, 39, 248 A.2d 446 (Cty.Ct. 1968) (authority of agent to borrow *108 on principal's credit will not be lightly inferred); see also Lit Bros. v. Haines, 98 N.J.L. at 658, 121 A. 131; Sears Roebuck & Co. v. Ragucci, 203 N.J. Super. 82, 495 A.2d 923 (Law Div. 1985) (an authorized buyer using another's credit card was not herself liable on a direct contractual obligation for the credit card purchase), accord, Sears Roebuck & Co. v. Stover, 32 Ohio Misc.2d 1, 513 N.E.2d 361 (Ohio Mun. 1987).
We conclude that the burden of proof on the issue of apparent authority was not met here. Two possibilities exist: (1) The card was stolen and used without authority and no liability attaches or (2) the card was freely given to Calvin by Horton and used excessively but with apparent or actual authority and liability attaches. The record does not persuade us that plaintiff's version was more likely than not correct, especially since there was no prior credit relationship between the parties and the merchant did absolutely nothing to protect itself.
We reverse and direct a judgment in favor of the defendant Horton.
NOTES
[1] In this context, implied and apparent authority are identical, or synonymous, concepts. "In fact, apparent authority is generally inferred or implied from manifestations of the principal to third persons, and hence it is correct to speak of implied or inferred apparent authority in most situations where apparent authority exists." 1 Restatement, Agency 2d, § 8 Comment e at 34 (1958).