**PRESTA OIL, INC., Plaintiff,**

v.

**VAN WATERS & ROGERS CORPORATION, Defendant.**

No. 02–1217–WEB.

United States District Court, D. Kansas.

June 20, 2003.

Mark E. McFarland, Doering, Grisell & McFarland, P.A., Garden City, KS, for Plaintiff.

Wesley A. Weathers, Weathers & Riley, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

BROWN, Senior District Judge.

In this diversity action Plaintiff Presta Oil, Inc. (Presta), which operates a "Phillips 66" brand store, argues it has third-party beneficiary status under a credit card contract between Defendant Van Waters & Rogers Corporation (Van Waters) and Phillips 66 Company (Phillips). Van Waters, however, denies it is liable under any contract theory. Both parties move for summary judgment.

## I. FACTS

Based on the submissions of the parties and for purposes of summary judgment, the Court finds that the following facts are uncontroverted. Van Waters entered a retail charge agreement (Charge Agreement) with Phillips for the use a "Phillips 66" credit card. Van Waters was identified on the card as the sole cardholder. Van Waters employed Robert Pemberton (Pemberton) as a warehouse worker and Tammy Sutherland (Sutherland) as an administrative worker at its Liberal, Kansas, location. Sutherland gave the card to Pemberton, who was instructed to use it for business purposes only, primarily to purchase gasoline for his personal vehicle when he was on deliveries. Pemberton cannot recall that he or anyone else signed the back of the credit card.

Pemberton made a habit of playing the "Keno" game of the Kansas Lottery. Keno players may learn if they have won or lost within a few minutes of buying their ticket by watching a screen where the tickets are sold. Presta offered the Keno game at its store under a contract with the Kansas Lottery which gave Presta approximately 5% of the ticket sales.

In June 2000, Pemberton filled his vehicle with gasoline at Presta's store while in the course of his employment. He also placed some Keno bets, and when Pemberton presented Van Waters' credit card as payment for the gasoline, Presta's employee asked Pemberton if he also wished to pay for the Keno tickets with the card. Pemberton inquired if this was acceptable, and Presta's employee told him it was.[1] Around this time Presta's employees were accepting credit cards as payment for lottery tickets from other individuals as well.

Pemberton used Van Waters' credit card for the entire purchase. The receipt generated bore the legend, "customer agrees to pay the above total amount according to the card issuer agreement. Phillips 66 Co." The signature line was labeled "cardholder's signature," and Pemberton signed his own name for this and every subsequent purchase. Presta's employees did not then, or at any other time, ever examine the card, notice the name of the cardholder, compare the named cardholder to Pemberton's name, or otherwise question Pemberton's use of the card. According to Presta's employees, they thought the card was Pemberton's.

The credit card stated on the back that it was to be used for "purchases of petroleum products ... and other authorized merchandise and services which dealers of

---

1. There remains a dispute whether a sign was posted which prohibited credit card purchases of lottery tickets. Presta's employees have no recollection of such a sign. Pemberton remembers it but claims that Presta's employees told him that certain individuals were allowed to pay for lottery tickets by credit card. There is also some evidence that Pemberton used the card for personal purchases at other locations before this incident, but the details of these transactions remain controverted.

Phillips 66 company ... are authorized to sell on this card." Presta's store operated under a "Branded Marketer Sales Contract" (Brand Contract) with Phillips. The Brand Contract recited that Phillips "refines and markets gasolines and distillates," and that Phillips was "willing to sell to [Presta] and [Presta was] willing to buy such products for resale," subject to the terms of the Brand Contract.

Phillips did more than sell gasoline and distillates to Presta for resale, however. The Brand Contract specified that Phillips would "accept credit card charges made in accordance with the terms of Phillips' Credit Card Directory by authorized holders of credit cards approved by [Phillips] at retail units authorized to accept such charges." Phillips would, in other words, process credit card transactions made at Presta's store as long as those transactions conformed to Phillips' Credit Card Directory (Credit Directory).[2]

Under the Credit Directory, Phillips's own credit cards were authorized for products and services such as gasoline, tires, batteries, motor oil, and vehicle repairs. Other merchandise could be purchased with a Phillips 66 credit card, but only up to $50.00 per day. Cards such as VISA, MasterCard, and American Express could be used for any sales or services. The Credit Directory specified, however, that no credit card, whether issued by Phillips or by any other entity, could be used to purchase state lottery tickets, and that "[a]ny and all lottery ticket transactions are subject to chargeback.."

The Credit Directory contained a variety of other restrictions, and Phillips reserved the right to "reassign (chargeback) credit card invoices prepared or submitted improperly or in violation of the terms or conditions of this [Credit Directory] ...." The Credit Directory required Presta to "[b]e sure the credit card is approved for acceptance by Phillips," to "[s]ell only authorized products and services," and to not "make multiple invoices for a single sale."

The parties have stipulated that Presta's employees should have known of these restrictions. The employees did not know, and they did not tell Pemberton about the restrictions. When Presta's employees entered Pemberton's Keno purchases into the electronic credit card system, they simply identified the purchases as "miscellaneous."

Pemberton knew that his Keno purchases were against Van Waters' policies, however. When the June 2000 credit card statement from Phillips arrived at Van Waters' place of business, it included $684.57 for Pemberton's personal expenditures. The evidence does not show the precise amount attributable to Keno purchases, but it is uncontroverted that most of the total was for lottery tickets. Pemberton told Sutherland that he had made some personal charges on Van Waters' credit card, but he did not mention the nature of the purchases. Pemberton said that he would pay the statement, Sutherland agreed, and she gave the statement to him without opening it. Pemberton eventually paid June 2000 statement.

His gambling continued, however, and in July 2000 Pemberton purchased $27,833.47 worth of Keno tickets at Presta's store with Van Waters' credit card. Pemberton testified that he removed the July invoice

---

**2.** The Brand Contract also stated that:
   This is a sales contract. Neither [Presta] nor [Presta's] employees are joint ventures, partners, agents or employees of Phillips. Neither Phillips nor [Presta] is authorized to represent, obligate or bind the other.

   Nothing in this contract shall be construed as giving Phillips any right to exercise any control over [Presta's] operations or over the manner and method by which [Presta] conducts its operations.

from Sutherland's desk after the mail was delivered. According to Sutherland, the invoice was not missed because credit card use was intermittent and in some months no invoice was received. Pemberton could not pay the July 2000 bill, however, so he began betting more in an attempt to cover his losses.

In August 2000, Pemberton purchased $140,972.00 worth of Keno tickets at Presta's store with Van Waters' credit card. By that point he was purchasing thousands of dollars worth of tickets at a time. The credit card system would not process purchases this large, so Presta's employees made multiple entries for each purchase in amounts in the system would accept.[3] Presta's lottery sales increased so much with Pemberton's gambling that the Kansas Lottery gave Presta a new big-screen Keno monitor.

Pemberton's actions were eventually discovered, and Van Waters suspended him. Phillips made demand of $168,805.47 upon Van Waters, but Van Waters refused to pay.[4] On October 12, 2000, Phillips made a credit adjustment for the full amount to Van Waters's credit card account, and the next day, October 13, 2000, Phillips charged back the full amount to Presta. In a letter dated June 28, 2001, Phillips demanded payment of the chargeback based on the Credit Directory's prohibition against lottery ticket sales by credit card.[5]

On September 12, 2001, Presta reached a settlement with Phillips for payment of the chargeback (Settlement). Presta agreed to establish two new Phillips 66 brand stores for $168,800.00 less than Phillips would otherwise have to pay for the stores. The Settlement recited that Presta was liable to Phillips for $168,800.00 "as a result of the credit card charges of lottery tickets at [Presta's store]," and that the "branding of the retail unit[s]" would eliminate "the debt owed to [Phillips] in this matter."

The Settlement also memorialized Presta's representation to Phillips that Presta "may sue or otherwise seek recovery from [Van Waters] and/or others ...," but the Settlement made clear that Presta would bear the sole and exclusive responsibility for such an action. Presta, in fact, agreed to defend and indemnify Phillips against any cost, liability, or loss related to such a suit. The settlement makes no mention of any rights Phillips might have had against Van Waters, or that any such rights were assigned by Phillips to Presta.

3. There is some conflict in the evidence regarding whether Pemberton suggested breaking the purchases down into lesser amounts.

4. Although the parties stipulated to these facts, Pretrial Order stipulations 7 & 8, Van Waters now alleges that Phillips credited its account *before* Phillips made the demand for payment: "this [the demand letter] was obviously a mistake in that the legal department of Phillips ... where this letter was authored, apparently had not been advised that two months earlier, Phillips'[] ... accounting department had reversed the transactions, credited [Van Waters's] account and was in the process of charging back the entire amount to Presta." Van Waters's Response to Presta's Motion for Summary Judgment, at 5. While Presta does not respond to this assertion, Van Waters' statement of uncontroverted facts does not give the date of the demand letter or otherwise set out the order of the events. The demand letter referred to by Van Waters is also not provided as an exhibit. Therefore, the Court will not find for purposes of summary judgment that Phillips first credited Van Waters' account and then inadvertently made demand on Van Waters for payment.

5. Stipulation 12 in the Pretrial Order states the chargeback occurred on June 28, 2001. The letter from Phillips to Presta dated June 28, 2001, was not a chargeback, however, only a demand for payment of the October 13, 2000, chargeback. *See* Presta's Exhibit J, Van Waters's Exhibit O.

## II. ANALYSIS

### A. *Summary judgment standard*

Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court must examine the factual record and draw reasonable inferences in the light most favorable to the nonmoving party. *See Simms v. Okla. ex rel. Dept. of Mental Health,* 165 F.3d 1321, 1326 (10th Cir. 1999). A moving party is entitled to summary judgment if the nonmoving party fails to establish an essential element of the nonmoving party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265, 279 (1986).

### B. *Third-party beneficiary*

■ As a general matter, Kansas recognizes that third parties may enforce contracts entered into by contracting parties if the contracting parties intended for the third party to receive a direct benefit from the contract. *Bodine v. Osage County Rural Water Dist. No. 7,* 263 Kan. 418, 949 P.2d 1104, 1114 (1997). This is true even if the third party had no knowledge of the contract and paid no part of the consideration. *Fasse v. Lower Heating & Air Conditioning,* 241 Kan. 387, 736 P.2d 930, 932 (1987). The third party may not enforce the contract if the third party benefits only incidentally from the contract, however, the contract must have been "made for the third party's benefit as its object ...." *Id.*

Presta maintains that the Court should apply third-party beneficiary law in this case. Credit card transactions "involve three parties: 1) the debtor/card holder; 2) the creditor/card issuer; and 3) the merchant who honors the credit card." *In re Slyman,* 234 F.3d 1081, 1086 (9th Cir. 2000) quoting *Citibank (South Dakota), N.A. v. Eashai (In re Eashai),* 87 F.3d 1082, 1087 (9th Cir.1996). Presta contends that it, the merchant who honored the credit card, was a third-party beneficiary of the Charge Agreement between Phillips, the creditor/card issuer, and Van Waters, the debtor/card holder. Although Presta cites no cases applying third-party beneficiary law in this situation, it refers to the formulation of third-party beneficiary law in the Restatement (Second) of Contracts. The Kansas Supreme Court has generally approved the Restatement's formulation of third-party beneficiary law. *See Cornwell v. Jespersen,* 238 Kan. 110, 708 P.2d 515, 521 (1985).

According to Restatement (Second) of Contracts § 302 (1981):

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Presta argues it is an intended beneficiary under § 302(1)(a), which applies to "creditor beneficiaries." Under this approach, Presta's cause of action would be against whatever party was the promisor under the Charge Agreement. "In such cases ... a direct action by the beneficiary against the promisor is normally appropriate to carry out the intention of promisor and promisee, even though no intention is manifested to give the beneficiary the ben-

efit of the promised performance." § 302, cmt. b.

It is important, therefore, to identify the promisor under the Charge Agreement.[6] While the Charge Agreement involved reciprocal promises, the promise Presta places in contention is Phillips' promise to pay merchants who honor Van Waters' credit card.[7] In the framework of third party beneficiary law, then, Phillips was the promisor and Van Waters was the promisee, and it is Phillips' promise which Presta now seeks to enforce.[8]

With this in mind the Court turns to Presta's contention that § 302, cmt. b, illus. 3, applies here:

> B promises A to pay whatever debts A may incur in a certain undertaking. A incurs in the undertaking debts to C, D, and E. If the promise is interpreted as a promise that B will pay C, D, and E, they are intended beneficiaries under Subsection (1)(a); if the money is to be paid to A in order that he may be provided with money to pay C, D, and E, they are at most incidental beneficiaries.

Presta correctly observes that, under the framework of this illustration, parties "C, D, or E" can sue "B," with whom the third parties have not contracted, because "B" promised to pay "A's" debts pursuant to a separate contract. For example, in *Bank of Garnett v. Cramer*, 7 Kan.App. 461, 53 P. 534, 534–35 (1898), a bank agreed to honor all checks drawn by an individual in exchange for a promissory note binding the individual and his cosigners to pay any overdrafts with interest. When the bank refused to honor a check drawn by the individual, the person who accepted the check sued the bank. The Kansas Court of Appeals affirmed a jury verdict against the bank, holding that " 'a person for whose benefit a promise to another ... is made, may maintain an action ... against the promisor.' " *Id.*, at 535, quoting *Burton v. Larkin*, 36 Kan. 246, 13 Pac. 398, 399 (1887).

Here, however, Presta has not sued Phillips, the promisor or "B" in illustration 3, but Van Waters, which is the promisee or "A" in illustration 3. Presta can recover against Van Waters only if Presta can show, as a creditor beneficiary, that it has a claim against Van Waters as the promisee.

---

6. Phillips is not a party to this action, and therefore the Court cannot make a binding determination regarding the contractual obligations, if any, of Phillips. Moreover, because the parties have not conducted discovery of Phillips's practices, the precise nature of Phillips's credit services is not before the Court. Nevertheless, given that the parties, particularly the Presta, have framed the issues with reference to Phillips' role as card issuer, some discussion of the parties' contracts with Phillips is inevitable.

7. "Pursuant to the [Charge Agreement], [Phillips] promised Van Waters to pay whatever charges Van Waters incurred on its Phillips 66 Company credit card at Presta's store." Plaintiff's Memorandum in Support of Motion for Summary Judgment, at 13.

8. To the extent cardholders promise to pay card issuers for any credit card charges incurred, *In re Mercer*, 246 F.3d 391, 414 (5th Cir.2001), Van Waters could be construed as a promisor under the Charge Agreement. This construction would not benefit Presta, however, because then Presta would be only an incidental beneficiary of any payments from Van Waters to Phillips. See Restatement (Second) of Contracts § 302 cmt. b, illus. 3 ("if the money is to be paid to A in order that he may be provided with money to pay C, D, and E, they are at most incidental beneficiaries"). Presta recognizes this point and emphasizes that Phillips was the promisor: "Phillips [] did not incur the debts to [Presta]. [Van Waters] incurred the debts to [Presta] and Phillips [] promised [Van Waters] it would pay [Presta] for [Van Waters'] debts incurred to [Presta]." Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment, at 4.

Of course, a creditor beneficiary may sue a promisee as well as a promisor. *See* Restatement (Second) of Contracts § 310 cmt. a, illus. 1 ("A owes C $100. For consideration B promises A to pay the debt. B breaks his contract. C can sue A and can also sue B to get judgment . . . ."). A suit by a creditor beneficiary against a promisee is based either on the original obligation running from the promisee to the creditor beneficiary, or on the promisee's status as surety for the promisor's duty to pay the creditor beneficiary. Restatement (Second) of Contracts § 314 cmt. a ("a contract to satisfy a duty of the promisee to an intended beneficiary makes the promisee a surety for the promisor."); 9 Corbin on Contracts, § 825 (Interim Ed., 2002) (the creditor's "direct contractual right against the promisee is unchanged for purposes of suit thereon" until the creditor has notice of the contract between the promisee and the promisor, when "in many respects the relations between the creditor and the promisee . . . become those of creditor and surety, the new promisor being regarded as the principal debtor.").

■ Whether Van Waters has an original obligation to Presta under a sales contract for the Keno tickets is examined in the next section. Regarding Presta's right to recover from Van Waters as surety for Phillips, Kansas has long recognized that whatever discharges a principal discharges the surety. *See Union Stove and Machine Works v. Caswell,* 48 Kan. 689, 29 P. 1072, 1076 (1892); *see also* 9 Corbin on Contracts, *supra,* at p. 258–59 ("a[ ] . . . discharge given by the third party to the promisor will discharge the obligation of the promisee to the third party."). The Settlement discharges Phillips of any obligation it has, as promisor, to pay the debts incurred by Van Waters. Presta cannot now proceed as a creditor beneficiary against Van Waters as promisee after deciding to release the promisor from the debt.

Presta did purport to reserve its rights against Van Waters, and generally a creditor can do so. *See* Restatement of Security § 122(b) (1941). The Kansas Supreme Court has relied on this Restatement, albeit in a different situation. *See Walton v. Piqua State Bank,* 204 Kan. 741, 466 P.2d 316, 327 (1970). Nevertheless, a creditor cannot proceed against a surety after failing to collect from the principal due to the creditor's own failure of performance. "Where there is a promise for an agreed exchange between creditor and principal and there is a material failure of performance by the creditor not justified by the conduct of the principal, the surety is not liable to the creditor unless the principal has elected to treat the failure only as a partial breach." Restatement of Security § 126.

In this case, if Presta had not violated the Credit Directory (a material failure of performance of the agreed exchange), it would have remained paid. Because it was Presta's own conduct which gave Phillips a defense, and because Phillips elected to exercise that defense against Presta, Van Waters is not now liable to Presta. *See id,* cmt. a ("since the surety's obligation is based upon the existence of a duty of principal and creditor, the creditor cannot recover from the surety when the creditor's conduct gives the principal a defense . . . .").

Aside from the Presta's failure of performance under the Credit Directory, Presta has at the very least agreed to modify Phillips' duty as promisor. Presta first accepted payment from Phillips, and now Presta has reimbursed Phillips under the terms of the Settlement. Van Waters, therefore, is discharged from any duty as surety on Phillips original promise to pay

Presta. *See* Restatement of Security § 128.

Third-party beneficiary and suretyship law do not support Presta's claim, even if a Kansas court would apply such law in this situation. Given the parties and facts before it, the Court concludes that Presta, as a third-party beneficiary, cannot recover from Van Waters as a matter of law.

## C. *Contract between Van Waters and Presta*

### 1. Applicable law

■ As described above, Presta's claim against Van Waters may also be based on an original obligation under a sales contract for the Keno tickets. Presta, in fact, plead such a contract. In the Pretrial Order, Presta identified the essential elements of its claim as: "[t]he existence of an agreement between the parties; [s]ufficient consideration to support the agreement; [Presta's] performance; [Van Waters'] breach of the agreement; [d]amages to [Presta] caused by the breach." *Id.* at 8. In its briefing on summary judgment, Presta affirmed that its "cause of action against [Van Waters] is in the nature of a contract," and that in order to prevail, "[Presta] must prove (1) the existence of an agreement between the parties; (2) sufficient consideration to support the agreement; (3) [Presta's]performance; (4) [Van Waters'] breach of the agreement; and (5) damages to [Presta] caused by [Van Waters'] breach." Memo in Support, at 10.

Although Presta pleaded its case as a contract dispute, it relies heavily on case law which construes federal consumer credit law such as the Truth in Lending Act, 15 U.S.C. § 1601, et seq. (TILA).[9] In response to Van Waters' argument that TILA does not apply, Presta contended

that its "cause of action, although based on a theory of contract, involves substantive issues that are governed by the [TILA], the Kansas Truth–in–Lending Act, K.S.A. 16–841 et seq. and developed case law interpreting and applying either or both of these Acts, and/or common law principles of agency and/or contract law as adopted by the courts of the state of Kansas." Response to Defendant's Memorandum in Support of Motion for Summary Judgment, at 1–2. Before proceeding, then, the Court must decide the extent to which TILA and the Kansas Truth–in–Lending Acts apply.

Most cases cited by Presta, or for that matter Van Waters, apply TILA and other statutes because credit card use is subject to federal regulation. Presta, for example, cites *Towers World Airways, Inc. v. PHH Aviation Systems, Inc.,* 933 F.2d 174, 175–76 (2nd Cir.1991), a suit between a card issuer and a cardholder to determine whether purchases made by the cardholder's employee were authorised under 15 U.S.C. § 1643(a)(1). This is typical given that TILA places the risk of loss on the card issuer if the cardholder can prove the use was unauthorized. *See* Clark and Clark, *supra,* at ¶ 15.03[2]. The merchant is usually not a party because the merchant is paid by the card issuer in nearly every instance. *See Citicorp Credit Servs., Inc. v. Hinman (In re Hinman),* 120 B.R. 1018, 1022 (Bkrtcy.D.N.D.1990) ("The credit card industry functions upon the issuer's guarantee of payment to the merchant.").

The parties have identified only one case between a cardholder and a merchant. In *Blaisdell Lumber Co., Inc. v. Horton,* 242 N.J.Super. 98, 575 A.2d 1386, 1387 (1990), a cardholder's friend took her card without

9. Presta goes so far as to argue that it is a "card issuer" under TILA. This argument is considered in section II(D) below.

permission and made purchases at a store. The cardholder notified the card issuer that the purchases were unauthorized, and the card issuer refused to pay the store. The store then sued the cardholder.

The store based its arguments on the common law of agency rather than on TILA because the card issuer was not a party. *See id.* at 1388. While the New Jersey court accepted this approach, it also considered TILA cases to determine the bounds of agency law. *Id.* at 1389. This was fitting because unauthorized use under TILA is defined by incorporating the common law of agency. *See* 15 U.S.C. § 1602(*o*) (unauthorized use means, *inter alia,* use by a person who does not have actual, implied, or apparent authority); *Towers World Airways, Inc.,* 933 F.2d at 176 (courts place "primary reliance on background principles of agency law" in determining liability under of cardholders under the TILA). Most cases applying the common law of agency to credit card purchases, therefore, naturally are TILA cases.

The Court agrees with the approach of the New Jersey court and rules that TILA, the Kansas Truth–in–Lending Act, and other such statutes and regulations do not control here because the card issuer is not a party. The only parties are Presta and Van Waters, and the only agreement before the Court is the sales contract, if any, between them. If the Court were to reach the issue of Pemberton's agency, the Court would, as in *Horton,* consult cases applying agency principles. Because the Court rules on a different basis, however, such cases are not applicable.

2.  Breach by Van Waters

■  Neither party cites Kansas law establishing that a credit card transaction creates a contract between the cardholder and the merchant, but there is no doubt that such a contract is created. *See* Clark and Clark, *The Law of Bank Deposits, Collections and Credit Cards,* ¶ 15.02[4] (Rev. Ed.2002) (the "underlying sales agreement between the merchant (seller) and the cardholder (buyer)" is one of several agreements in a typical credit card transaction).

For the reasons which follow, the Court concludes that, even if Van Waters entered a sales contract with Presta through Pemberton's Keno purchases, Presta has failed to make a sufficient showing that Van Waters breached the sales contract. Presta, of course, would bear the burden on this issue at trial, *Nash Finch Co. v. Caspar,* 813 F.Supp. 1497, 1499 (D.Kan.1993), and because this is an essential element of Presta's claim, summary judgment must be granted to Van Waters.

The critical fact here is that, unlike the merchant in *Horton,* Presta was paid for the purchases at its store. The Court does not hold that the mere presentation of a credit card constitutes payment in Kansas. Certainly checks and notes do not operate as payment or discharge of indebtedness absent agreement of the parties. Instead, they are taken on the presumption that they will be honored by the bank on which the check is drawn or by the obligor who signed the note. *See Badger Lumber & Coal Co. v. Brown & Grube et al.,* 124 Kan. 255, 259 P. 786, 788 (1927); *Blair, Matlack, Rogg, Foote & Scott, P.A. v. Fidelity Life Assoc.,* 1 Kan.App.2d 382, 567 P.2d 22, 30–31 (1977).

Credit cards are more automatic in their operation than checks or notes, but courts which have examined whether a credit card is legal tender have concluded that it is not. Instead, these courts held that the debt incurred in a credit card transaction is discharged when the merchant receives payment from the card issuer. *See Porter v. City of Atlanta,* 259 Ga. 526, 384 S.E.2d 631, 634 (1989), *cert denied* 494 U.S. 1004,

110 S.Ct. 1297, 108 L.Ed.2d 474 (1990); *Berry v. Hannigan,* 7 Cal.App.4th 587, 9 Cal.Rptr.2d 213, 215 (1992), *rev. denied* Sept. 02, 1992; *Cade v. Montgomery Co.,* 83 Md.App. 419, 575 A.2d 744, 749 (1990), *rev. denied* Aug. 30, 1990, *cert denied* 498 U.S. 1085, 111 S.Ct. 960, 112 L.Ed.2d 1047 (1991).

Here, therefore, when Presta received payment from the Phillips, any debt owed by Van Waters was discharged. Presta had no complaint for failure to pay after the lottery ticket transactions. Phillips credited Plaintiff's account, and Presta only lost its "paid" status when, via an admission of its own liability under a contract separate from any sales contract, it disgorged the payments back to Phillips over a year after they were made. Presta has failed to identify a breach *by Van Waters* of any *contractual* duty *to Presta* which led to this result.

In places Presta alleges breaches as if its claim sounds in tort and not contract.[10] Van Waters responds by pointing out that Presta plead only a contract claim, and Presta replies that "the application of tort concepts to a contract action neither changes the character of the action nor constitutes a separate negligence claim." Reply to Defendant's Response, at 6.

Without delving into the distinctions between contract and tort under Kansas law, suffice it to say that "a breach of contract is a failure of performance of a duty arising or imposed by agreement; whereas a tort is a violation of a duty imposed by law." *KPERS v. Reimer & Koger Assoc., Inc.,* 262 Kan. 110, 936 P.2d 714, 718 (1997). It is clear from the Pretrial Order that Presta has pleaded a breach of a duty arising or imposed by agreement, not a duty imposed by law. Just as Presta can-

not change the character of its action or bring a separate negligence claim in its summary judgment briefing, the Court cannot find a breach of contract under Kansas law unless that finding is based on the parties' agreement, if any. Presta has not made this showing.

Kansas law does imply a covenant of good faith and fair dealing in almost every contract, *Flight Concepts Ltd. Partnership v. Boeing,* 38 F.3d 1152, 1157 (10th Cir. 1994), but even if Pemberton was acting as an agent of Van Waters in tendering payment, there is no evidence that Presta was damaged by a breach of the implied covenant. Presta's agents told Pemberton the credit card could be used as payment for lottery tickets, and Presta's employees allowed others to purchase lottery tickets by credit card. The language on the back of Van Waters' credit card restricting its use to certain authorized products did not rule out lottery tickets or otherwise indicate that lottery tickets were not authorized by Phillips. There was testimony that Pemberton instructed Presta's employees how to break the larger charges down into smaller amounts, but the chargeback was based on the lottery ticket sales, not on the manner in which they were processed.

Presta attempts to show a breach of contractual duty with the credit card receipts, which include a promise of the "customer" to pay under the "card issuer agreement." Construed in the light most favorable to Presta, these receipts are evidence that Pemberton, acting as an agent of Van Waters, agreed to pay *Phillips* according to the Charge Agreement. This comports with credit card transactions generally, in which a cardholder's duty to pay is not transferred from the merchant

---

**10.** "[Van Waters'] inaction, when it knew or reasonably should have known that its Phillip's 66 Company credit card was being misused by its employee, allowed the misuse to continue and, for that reason, [Van Waters] is responsible to [Presta] for its employee's credit card charges." Memo in Support, at 15–16.

to the card issuer like an account receivable, but rather arises directly from the cardholder's contract with the card issuer. *See* Clark and Clark, *supra,* at ¶ 15.02[5]. Once again, Presta has not shown that Van Waters breached any contractual duties under a sales contract.

Given the facts of this case and the claims made by Presta, Presta has no recourse against Van Waters.

D. *Presta as card issuer under TILA*

 One other matter merits attention. Presta contends it was a "card issuer" under TILA because it acted as Phillips' agent in processing Pemberton's credit card purchases. See 15 U.S.C. § 1602(n)(a card issuer is any person who issues a credit card "or the agent of such a person with respect to such card"). Presta makes this argument in spite of agreeing in the Brand Contract that it did not have an agency relationship with Phillips.

In any event, a card issuer under TILA is also a "creditor" under that statute, and Presta can hardly maintain that it both "regularly extends ... consumer credit," and "is the person to whom the debt arising from the consumer credit transaction is initially payable ...." 15 U.S.C. § 1602(f). For example, a financial institution which purchases delinquent credit card accounts from a card issuer for collection is not a "card issuer" as to the delinquent accounts. *Neff v. Capital Acquisitions & Management Co.,* 238 F.Supp.2d 986, 991–992 (N.D.Ill.2002). Such a financial institution may become an agent if it offers a line of credit to pay obligations incurred in using the card issuer's credit card, *id.,* but that did not happen here. Presta offers no cases supporting its contention, and the Court concludes it is without merit.

IT IS THEREFORE ORDERED that Presta's motion for summary judgment (Doc. 27) is DENIED;

IT IS FURTHER ORDERED that Van Waters' motion for summary judgment (Doc. 29) is GRANTED.